[Civ. No. 6656.   Fourth Dist.   Jan. 23, 1962.]

Estate of WALDO B. UPDEGRAPH, Deceased. MARGARET E. UPDEGRAPH, Objector and Appellant, v. VELMA P. GERLING, Individually and as Executrix, etc., et al., Claimants and Respondents.

Coffee & Wolfe and Roy E. Wolfe for Objector and Appellant.

John D. Boyle and Charles F. Hamlin for Claimants and Respondents.

COUGHLIN, J.—The appellant herein, Margaret E. Updegraph, is the widow of Waldo B. Updegraph, deceased; appeals from an order determining heirship, by which the trial court determined that the bulk of the decedent's estate was his separate property and defined the boundaries of the "home property" in which she had been devised a life estate; and also appeals from an order terminating the payment of a widow's allowance.

With two exceptions, which were covered by stipulation, the trial court found that each of the items in the decedent's estate was his separate property; that three of these items were owned and acquired by the decedent prior to his marriage to appellant; that one of these items consisted of a bank account in which the proceeds from his separate property had been deposited including, among other things, police pension payments the right to which had vested in him prior to said marriage; that the remainder of these items, specifically describing each thereof, constituted the proceeds of property owned by the decedent prior to said marriage, designating the separate property source thereof and tracing the proceeds of such source to the item in question; that any services rendered by the decedent in connection with an orange grove owned

by him prior to marriage, a part of which was sold during marriage, and a part of which constituted an asset of his estate, "were insubstantial and the proceeds therefrom cannot be traced or allocated to any of the assets of the decedent included in the Inventory and Appraisement"; that "any community earnings or other community property of the decedent and petitioner received or acquired during the period of their marriage was expended prior to the death of the decedent for the support and maintenance of the petitioner and the decedent"; and that by a provision in the will of the decedent wherein he devised to appellant a life estate "in the home property in which we are living at the time of my death," the decedent intended to provide appellant with "the home together with such real property adjacent thereto as is necessary to the quiet and peaceful possession" thereof, specifically describing the same, which was a part of the orange grove in question.

In substance, appellant contends that these findings are not supported by the evidence although, in her closing brief, she claims that she does not seek a reversal upon the ground that the evidence is insufficient to support the judgment but, rather, on the ground that the court erred in applying the law to the evidence presented. An analysis of her several arguments reveals that she relies upon both of these grounds; in some instances the contention that the evidence is insufficient to support certain findings is related to the court's allegedly erroneous application of the law; and in other instances appellant succumbs to the oft-repeated practice of many appellants who argue the weight of the evidence under a contention urging its insufficiency.

In the latter category is appellant's contention, based on the rule stated in *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757, 758 [146 P.2d 905], that she and her husband, by oral agreement, converted the orange grove from separate to community property status. It is doubtful that there is any evidence in support of this contention; there is no direct evidence on the subject; the inferences relied upon are weak; and under any circumstances, no more than a question of fact is presented, which the trial court determined adversely to her contention.

Appellant and decedent were married a little over 10 years prior to the latter's death. At the time of their marriage each of them owned property. The evidence indicates that the parties were conscious of their separate interests; discussed

the matter; and justifies the conclusion that they made an effort to maintain the separate status thereof.

After marriage, the husband supervised the operation of his orange grove, but the bulk of the work actually done thereon was performed by others, and the evidence not only fully supports the finding that the services rendered by him in connection therewith were "insubstantial," but fails to provide the means whereby they could be evaluated. It appears that the orange grove did not net a profit.

One of the assets of the estate was a bank account which before marriage stood in the name of decedent; after marriage was converted to the joint names of decedent and appellant, at which time both separate and community funds were placed therein; and later was placed in the name of decedent alone. The court found that the latter event occurred with full knowledge of appellant and without any objection from her. Appellant contends that this finding is without evidentiary support, but our review of the record discloses the contrary.

██ ██ Appellant places great reliance upon two presumptions, i.e., (1) that property acquired by a husband during marriage, even though placed in his name alone, is presumed to be community property (see *Estate of Rolls*, 193 Cal. 594, 597 [226 P. 608], and *Socol* v. *King*, 36 Cal.2d 342 [223 P.2d 627]), and (2) that where separate property which is commingled with community property cannot be traced, the whole will be presumed to be community property. (See *Mueller* v. *Mueller*, 144 Cal.App.2d 245, 250 [301 P.2d 90].)

██ She mistakenly states the latter presumption; contends that the mere commingling of separate with community property changes the character of the former; and argues that any separate property placed in a community bank account forthwith becomes community funds. This is an incorrect concept. (*Estate of McGee*, 168 Cal.App.2d 670, 677 [336 P.2d 622].)

██ ██ The presumptions relied upon are not conclusive; may be rebutted by circumstantial as well as direct evidence (*Tassi* v. *Tassi*, 160 Cal.App.2d 680, 688 [325 P.2d 872]); and a finding contrary thereto supported by substantial evidence will not be disturbed on appeal. (*Estate of McGee*, *supra*, 168 Cal.App.2d 670, 677.)

During the course of their marriage the decedent deposited his earnings in the bank account in question along with proceeds from transactions involving his separate property.

██ "If the exact amount of money allocable to separate

property and the exact amount of money allocable to community property deposited in a bank account can be ascertained, the money allocable to separate property is not so commingled that all of the funds become community property.'' (*Thomasset* v. *Thomasset,* 122 Cal.App.2d 116, 124 [264 P.2d 626] ; *Tassi* v. *Tassi, supra,* 160 Cal.App.2d 680, 689; *Estate of McGee, supra,* 168 Cal.App.2d 670, 677.)

The evidence in the case at bar justifies the conclusion of the court that the funds withdrawn by the decedent from the subject bank account, and invested in the property which became assets of his estate, were his separate funds; also that the funds remaining in the account at the time of death were his separate funds.

Of note is the finding that all of the community earnings and other community property acquired during marriage by Mr. and Mrs. Updegraph were expended for their support and maintenance. As a consequence, none of the estate left by the decedent consisted of community property. (*Estate of Arstein,* 56 Cal.2d 239, 241 [14 Cal.Rptr. 809, 364 P.2d 33] ; *Estate of Ades,* 81 Cal.App.2d 334, 339 [184 P.2d 1].) The evidence indicates that although Mr. Updegraph was working after his marriage, the amount of his earnings together with the value of any services he may have rendered in the operation of his orange grove, were wholly inadequate to defray the normal household expenses of a husband and wife. In this regard, appellant claims that the court did not consider as community earnings the pension payments made to Mr. Updegraph during marriage. The evidence establishes that prior to marriage he was a member of the Los Angeles Police Department; had retired; and was receiving a pension under the charter provisions of that city. Appellant relies upon and cites language used in the case of *Cheney* v. *City & County of San Francisco,* 7 Cal.2d 565, 568, 569 [61 P.2d 754], i.e., that the right to a pension does not accrue until the event upon which payment is conditioned has occurred and that the amounts paid thereunder represent earnings, as authority for her contention that each month's pension payment to the decedent was conditioned upon his being alive at the time of payment; that this event took place during marriage; that the right to the funds paid occurred during marriage; that the amount paid represented earnings; and, therefore, that they constituted community property. The language relied upon related to the particular facts in the cited case and is not applicable to the facts in the case at bar.

■ Furthermore, it is quite apparent that in the instant case all of the events precedent to a vesting of the decedent's rights to a monthly pension occurred prior to marriage. The fact that the payments thereunder were limited to his lifetime and some of them were paid after his marriage had no bearing on his right thereto. The decedent's pension rights were earned during his employment (*Abbott* v. *City of Los Angeles,* 50 Cal.2d 438 [326 P.2d 484]; *Abbott* v. *City of San Diego,* 165 Cal.App.2d 511, 517 [332 P.2d 324]), and are not related to any incident occurring during his marriage to appellant. The conclusion of the trial court that the payments made to him were his separate property was correct. (*Gettman* v. *City of Los Angeles Dept. of Water & Power,* 87 Cal.App.2d 862 [197 P.2d 817].)

We have reviewed the record in this matter and determined that the findings of fact made by the trial court are supported by substantial evidence which, under the settled rule, forecloses a successful attack against them on appeal. (*Estate of Arstein, supra,* 56 Cal.2d 239, 240.) It is not necessary that we further discuss the evidence which supports this conclusion. (*Estate of Arstein, supra,* 56 Cal.2d 239, 241; *Fomco, Inc.* v. *Joe Maggio, Inc.,* 55 Cal.2d 162, 164 [10 Cal. Rptr. 462, 358 P.2d 918]; *Edwards* v. *Container Kraft Carton etc. Co.,* 161 Cal.App.2d 752, 756 [327 P.2d 622].)

With respect to that part of the order which limited appellant's life estate in the ''home property'' to the residence occupied at the time of death and a plot of ground 130 feet by 124 feet in dimension upon which it was situated, rather than the whole of the orange grove surrounding it, appellant says:

''Frankly, we cannot argue the point except that it seems highly unreasonable that a house located upon a lot, five acres, ten acres, or twenty acres called a home place means only the house and the land upon which it sits.''

The land described in the questioned order includes a reasonable area around the house. The decedent's will devised a life estate ''in the home property in which we are living at the time of my death, inclusive of furniture and furnishings *therein.*'' (Italics ours.) The home property thus devised was imperfectly described. In this aspect the will was uncertain. The court was required to determine the intention of the decedent in the premises; its findings are supported by the evidence; and its conclusion was in accord with the views expressed by this court in *Estate of Sandersfeld,* 187 Cal.App.2d 14 [9 Cal.Rptr. 447].

After the order determining heirship had been made, the executrix filed a petition for partial distribution, payment of attorney's fees and for an order terminating the widow's allowance. Appellant objected to this petition. No reporter's transcript of the proceedings which occurred at the time of the hearing on this petition is on file with this court. However, it appears without dispute that no evidence was taken in connection with the hearing; also that the trial court was aware of the fact that over a period of approximately 18 months, the widow had received $5,050 from the estate under an order for a widow's allowance, that an order determining heirship had been made, which determined that all of the property of the estate was the separate property of the decedent with the exception of the furniture and furnishings in the home place where the widow was living, and that an appeal had been taken from this order; that counsel for both parties argued the matter on the assumption that these facts were properly before the court; that their conduct constituted an implied stipulation to this effect; and that the court made its decision accordingly, denying the petition for partial distribution, allowing the fee, and terminating the order for a widow's allowance.

The amount of an allowance payable to a widow pending settlement of her husband's estate, as well as the time during which payment thereof should be made, are matters within the discretion of the probate court, and unless its order terminating a previous order awarding such an allowance constitutes an abuse of discretion, it will not be disturbed on appeal. (*Estate of Boselly,* 179 Cal. 218 [176 P. 45]; *Estate of Coffin,* 16 Cal.App.2d 532 [61 P.2d 81]; *Estate of Taylor,* 12 Cal.App.2d 374 [55 P.2d 537]; *Estate of Clark,* 96 Cal. App. 243 [274 P. 76].) No abuse of discretion appears in the instant case. The trial court was entitled to conclude that appellant's appeal was without merit; was the cause of an unnecessary delay; and that the payment of any additional amounts to her was not warranted.

The orders appealed from are affirmed.

Griffin, P. J., and Shepard, J., concurred.