[No. D011223. Fourth Dist., Div. One. Jan. 7, 1991.]

TREVA ANN FREDERICKS, Plaintiff and Respondent, v.
EDMUND OTTO FREDERICKS, Defendant and Appellant.

COUNSEL

Leyon D. Sakey for Defendant and Appellant.

Demchuk, Robbins & Holdaway and Diane E. Robbins for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—The question presented in this appeal is whether Treva Ann Fredericks, the former wife of Edmund Otto Fredericks, has a quasi-community property interest in Edmund's military pension benefits resulting from his service in the United States Armed Forces from June 1949 until December 1971. This relatively simple legal issue is complicated by the facts.

Treva and Edmund married and divorced each other twice. Their first marriage in 1953 and divorce in 1972 were in Pennsylvania. By the time they remarried in Pennsylvania in 1975 Edmund had been receiving his military pension for about three years. In the discussion which follows we explain that even though the parties' second marriage was dissolved in California the court erred in awarding 41 percent of Edmund's retirement benefits plus $6,966.31 in back payments to Treva. We reverse the judgment for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

Edmund and Treva moved to California in 1977 and became domiciled here. Less than a year later Treva petitioned the San Diego Superior Court to dissolve the marriage. A final judgment of dissolution was entered in April 1981.

Neither the family law proceeding in Pennsylvania nor the one here adjudicated Edmund's military pension. In 1988 Treva filed this action to determine her community property interest in the pension benefits seeking a partition and an accounting. Finding Edmund's military pension to be quasi-community property the court made the award noted above. This appeal ensued.

## DISCUSSION

Civil Code section 4803[1] defines quasi-community property in relevant part as: ". . . all real or personal property, wherever situated, heretofore or hereafter acquired . . . (a) By either spouse while domiciled elsewhere which would have been community property if the spouse who acquired the property had been domiciled in this state at the time of its acquisition."

In the interest of brevity we neither recite the legislative history of section 4803 nor analyze the cases leading up to its judicial approval. (See *Estate of Thornton* (1934) 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343]; *Addison v. Addison* (1965) 62 Cal.2d 558 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391]; *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371].) ▪ It is now a recognized principle of law that vested property rights can be diminished by retrospective application of changes in marital property law where such application is demanded by a sufficiently important state interest. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 592.) ▪ Section 4803 is constitutionally applied provided: (1) both parties have changed their domicile to California, and (2) after the change of domicile the spouses seek a legal alteration of their marital status in a California court. (*In re the Marriage of Roesch* (1978) 83 Cal.App.3d 96, 106-107 [147 Cal.Rptr. 586]).

▪ Here it initially appears as if the facts of this case satisfy these requirements—the Fredericks changed their domicile to California and filed for divorce here. The problem with this solution is that it ignores the important fact that California dissolved the Fredericks' second marriage, not their first. Section 4803 must be examined in the context of their later marriage, the one that was dissolved here and not on the basis of the marriage that was terminated earlier in Pennsylvania. Although the Fredericks may have had personal reasons for renewing their matrimonial vows the Pennsylvania decree was never set aside. So far as the California court was concerned it was a valid judgment which should have been given full faith and credit. (U.S. Const., art. IV, § 1; see also *In re Marriage of Hattis* (1987) 196 Cal.App.3d 1162, 1171 [242 Cal.Rptr. 410].) More succinctly, when the Fredericks married a second time their first marriage was legal history. (Cf. *In re Marriage of Lucero* (1981) 118 Cal.App.3d 836, 843 [173 Cal.Rptr. 680].)[2] Treva's legal rights immediately following her second marriage to Edmund were the same as if she had married a man to whom she

---

[1] All statutory references are to the Civil Code unless otherwise specified.

[2] The court in *Lucero* stated, "Remarriage has no effect on the binding and conclusive nature of the final judgment of divorce which terminated the first marriage, and we cannot see how rights extinguished by that judgment could subsequently be revived." (At p. 843.)

had never been previously married. Examined in this analytic frame Treva did not acquire a quasi-community interest in Edmund's pension.

A California court determining whether property is quasi-community must first decide whether the property would have been community property in this state had the parties been domiciled here at the time of its acquisition. In making that decision the court must limit its inquiry to the period of the parties' marriage—here from 1975 to 1981. As noted earlier Edmund did not acquire any interest in his military pension during that time. When he married Treva in 1975 he was already receiving his military pension. Therefore the trial court could not consider the marriage during which the property was fully acquired because that marriage was legal history, irrelevant to this proceeding. Because Edmund's interest in the pension was fully acquired *before* his 1975 marriage to Treva it was his separate property. (§ 5108; *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 255 [105 Cal.Rptr. 483].) Consequently section 4803 does not apply and we must reverse the judgment.

We do not, however, reverse with instructions to the trial court to enter judgment for Edmund. It may be that under Pennsylvania law Treva has an interest in the pension acquired during her first marriage. She is therefore entitled to seek to amend her complaint so that she might obtain any equitable interest she may have in the pension under Pennsylvania law. Whether laches or other legal or equitable defenses may bar that complaint are separate questions which should also be decided under Pennsylvania law.

## DISPOSITION

Judgment reversed for further proceedings consistent with this opinion.

Huffman, J., and Froehlich, J., concurred.