[No. H032258. Sixth Dist. Mar. 24, 2009.]

In re the Marriage of BELITA and RICHARD ROSSIN.
BELITA ROSSIN, Appellant, v.
RICHARD ROSSIN, Respondent.

COUNSEL

Law Office of Mary K. Simpson, Mary K. Simpson; Law Office of Mary Bird and Mary C. Bird for Appellant.

Law Office of Lance A. Russell and Lance A. Russell for Respondent.

OPINION

**McADAMS, J.**—In this marital dissolution case, the parties dispute the proper characterization of disability benefits. Prior to the marriage, the wife had purchased a private disability policy, paid all the premiums, and started collecting benefits. The trial court nevertheless treated the benefits received by the wife during marriage as community property, reasoning that they were a substitute for wages.

As a matter of first impression, we conclude that the private disability benefits paid to the wife during marriage are her separate property, because she acquired the right to those benefits before marriage without any contribution from the community. We therefore reverse.

## BACKGROUND

The parties to this appeal are appellant Belita Rossin (the wife), and respondent Richard Rossin (the husband). The parties were married in July 2000 and separated in March 2005.

In June 1991, some nine years prior to the marriage, the wife purchased a private disability insurance policy, to provide income in the event that she was disabled from working as a pediatrician. In January 1997, the wife left the practice of medicine for mental health reasons. In April 1997, she began receiving benefits under the policy in the form of monthly payments from the insurer, which continued throughout the parties' marriage. Under the terms of the policy, the wife was not obliged to pay premiums during disability. Although disabled from working as a pediatrician, the wife was self-employed during the marriage as a music teacher. According to the husband, "the parties commingled their assets and contributed their respective incomes to maintain the community home and their life style."

In July 2005, the wife brought this proceeding for dissolution of the marriage. In connection with the property division, the wife claimed the disability benefits as her separate property and sought reimbursement. The husband disputed that claim, asserting that the disability benefits received during the marriage were community property.

In September 2006, by stipulation, the dispute was submitted for decision by written briefs. In October 2006, the trial court filed a statement of decision, finding that the disability benefits received during marriage were community property. In the court's view, because they "were intended to replace or substitute for salary/wages, it necessarily follows that the disability benefits received during marriage were community property." In September 2007, the court entered its dissolution judgment and property division order, which includes the challenged characterization of the disability benefits as community property.

This timely appeal by the wife followed. The sole issue on appeal is the character of the disability benefits as separate or community property.

## DISCUSSION

As a framework for our discussion, we first describe the general principles of marital property law that inform our analysis.

I. *General Principles*

A. *Overview*

■ "California community property law is a complex amalgam of principles derived initially from Spanish law extant during early statehood." (1 Raye et al., Cal. Civil Practice: Family Law Litigation (2002) Character and Valuation of Property, § 5:4, p. 9; see also *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 288–290 [39 Cal.Rptr.2d 673].) "It has evolved to reflect the prevailing attitudes towards marriage and the relationship between spouses. Three principles developed early and remain fundamental. [¶] (1) Equality of Interests. Spouses have equal ownership interests in community property. . . . [¶] (2) The 'Source' Doctrine. In the absence of a controlling statutory presumption to the contrary, the character of property as community or separate will be determined by the source of assets used to produce it. . . . [¶] (3) Alteration by Contract. Within certain public policy limits, and subject to certain formalities, the parties can agree to alter the application of community property laws to their marital property." (Raye, p. 9.)

Community property and separate property are defined in the Family Code. (Further unspecified statutory references are to that code.)

1. *Community Property*

Section 760 states: "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Under this section, "there is a general presumption that property acquired during marriage by either spouse other than by gift or inheritance is community property unless traceable to a separate property source." (*In re Marriage of Haines, supra*, 33 Cal.App.4th at pp. 289–290; see also, e.g., *In re Marriage of Mix* (1975) 14 Cal.3d 604, 611 [122 Cal.Rptr. 79, 536 P.2d 479].)

2. *Separate Property*

■ Section 770 states: "Separate property of a married person includes all of the following: [¶] (1) All property owned by the person before marriage. [¶] (2) All property acquired by the person after marriage by gift,

bequest, devise, or descent. [¶] (3) The rents, issues, and profits of the property described in this section." (§ 770, subd. (a).) Our state Constitution similarly provides: "Property owned before marriage or acquired during marriage by gift, will, or inheritance is separate property." (Cal. Const., art. I, § 21.) In addition, by statute, the spouses' postseparation "earnings and accumulations" are separate property. (§ 771, subd. (a).)

## B. *Characterization*

■ "Characterization of property, for the purpose of community property law, refers to the process of classifying property as separate, community, or quasi-community. Characterization must take place in order to determine the rights and liabilities of the parties with respect to a particular asset or obligation and is an integral part of the division of property on marital dissolution." (*In re Marriage of Haines, supra*, 33 Cal.App.4th at p. 291.) Generally speaking, property characterization depends on three factors: (1) the time of acquisition; (2) the "operation of various presumptions, particularly those concerning the form of title"; and (3) the determination "whether the spouses have transmuted" the property in question, thereby changing its character. (*Ibid.*) In some cases, a fourth factor may be involved: whether the parties' actions short of formal transmutation have converted the property's character, as by commingling to the extent that tracing is impossible. (1 Kirkland et al., Cal. Family Law: Practice and Procedure (2d ed. 2006) § 20.11, p. 20-31.)

### 1. *Time of Acquisition*

"Perhaps the most basic characterization factor is the time when property is acquired in relation to the parties' marital status." (*In re Marriage of Haines, supra*, 33 Cal.App.4th at p. 291; see also, e.g., *In re Marriage of Lehman* (1998) 18 Cal.4th 169, 183 [74 Cal.Rptr.2d 825, 955 P.2d 451].)

#### a. *Property character generally is fixed at acquisition.*

■ As well-settled case law recognizes: "The character of the property as separate or community is fixed as of the time it is acquired; and the character so fixed continues until it is changed in some manner recognized by law, as by agreement of the parties." (*Mears v. Mears* (1960) 180 Cal.App.2d 484, 499 [4 Cal.Rptr. 618], disapproved on other grounds in *See v. See* (1966) 64 Cal.2d 778, 785 [51 Cal.Rptr. 888, 415 P.2d 776]; accord, *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 255 [105 Cal.Rptr. 483].)

"Whether property held by a [spouse] during coverture is separate is determined by the time of its acquisition. If it was separate then, it continues to remain so with the exception of such increase thereof as may have been due to the contributions of the community by virtue of capital or industry." (*Kenney v. Kenney* (1950) 97 Cal.App.2d 60, 65 [217 P.2d 151]; see also, e.g., *Beam v. Bank of America* (1971) 6 Cal.3d 12, 17 [98 Cal.Rptr. 137, 490 P.2d 257].)

The same is true of community property. Property acquired during marriage as the result of a spouse's employment thus is "stamped a community asset from then on." (*In re Marriage of Lehman, supra*, 18 Cal.4th at p. 183.) "To the extent—and only to the extent—that an employee spouse accrues a right to property during marriage before separation, the property in question is a community asset." (*Ibid.*) Thus, "what is determinative is the single concrete fact of time." (*Ibid.*)

   b.   *Apportionment is distinct from characterization.*

■   In some cases, a property right is earned partly during marriage. For example, the right to enhanced retirement benefits may derive partly from employment during marriage and partly from the employee-spouse's post-separation efforts, as was the case in *In re Marriage of Lehman, supra*, 18 Cal.4th at pages 179–180. In such cases, "the question what extent such an enhancement belongs to the community and separate estates is one of apportionment and not characterization." (*Id.* at p. 180; see also *In re Marriage of Frahm* (1996) 45 Cal.App.4th 536, 545, fn. 2 [53 Cal.Rptr.2d 31].)

   2.   *Presumptions*

■   Although time of acquisition generally is the pivotal element in characterization of property, other factors may affect the analysis in some cases, including presumptions. "Where property status cannot otherwise be proved, characterization is determined by applicable presumptions." (*In re Marriage of Haines, supra*, 33 Cal.App.4th at p. 291.) "One category of presumptions includes those presumptions arising from the form of title . . . ." (*In re Marriage of Haines, supra*, 33 Cal.App.4th at p. 291.) Another type of presumption comes into play when the property must be traced for characterization purposes: the "presumption that family expenses are paid from community funds." (*In re Marriage of Mix, supra*, 14 Cal.3d at p. 612; see also, e.g., *Price v. Price* (1963) 217 Cal.App.2d 1, 8 [31 Cal.Rptr. 350].)

   3.   *Transmutation*

■   "Both before and during marriage, spouses may agree to change the status of any or all of their property through a property transmutation.

(§ 850.) A transmutation is an interspousal transaction or agreement that works a change in the character of the property." (*In re Marriage of Campbell* (1999) 74 Cal.App.4th 1058, 1062 [88 Cal.Rptr.2d 580].) "In order for a transmutation of property to occur, statutory formalities must be met." (*Ibid.*) "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (§ 852, subd. (a).) This provision "precludes the admission of extrinsic evidence to prove an oral transmutation of property between spouses." (*In re Marriage of Campbell*, at p. 1065.)

Because an agreement is required to transmute the character of property, the use of separate property during marriage—without more—does not convert it into community property. (*Patterson v. Patterson* (1966) 242 Cal.App.2d 333, 340 [51 Cal.Rptr. 339], disapproved on other grounds in *See v. See, supra,* 64 Cal.2d at p. 784.) Moreover, " 'mere commingling of separate with community funds in a bank account does not destroy the character of the former if the amount thereof can be ascertained.' " (*In re Marriage of Mix, supra,* 14 Cal.3d at p. 611.)

### C. *Appellate Review*

As a general rule, factual findings that underpin the characterization determination are reviewed for substantial evidence. "Appellate review of a trial court's finding that a particular item is separate or community property is limited to a determination of whether any substantial evidence supports the finding." (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 849 [21 Cal.Rptr.2d 642]; see also, e.g., *In re Marriage of Klug* (2005) 130 Cal.App.4th 1389, 1398 [31 Cal.Rptr.3d 327].)

But de novo review is appropriate where resolution of "the issue of the characterization to be given (as separate or community property) . . . requires a critical consideration, in a factual context, of legal principles and their underlying values, the determination in question amounts to the resolution of a mixed question of law and fact that is predominantly one of law." (*In re Marriage of Davis* (2004) 120 Cal.App.4th 1007, 1015 [16 Cal.Rptr.3d 220], citing *In re Marriage of Lehman, supra,* 18 Cal.4th at p. 184.)

### II. *Application*

With the foregoing principles in mind, we turn to the single question presented in this appeal: whether the private disability benefits received by the wife during the marriage are separate or community property.

### A. *Introduction*

The disability policy at issue here was purchased entirely before marriage, using only separate property funds; the payment of benefits under the policy also began prior to the marriage. Because these essential facts are undisputed, our review is de novo. (*In re Marriage of Lehman, supra,* 18 Cal.4th at p. 184; *In re Marriage of Davis, supra,* 120 Cal.App.4th at p. 1015.)

It appears that the exact issue before us is a question of first impression. So far as we are aware, no case has addressed the nature of *disability* benefits as a *disputed* question where the right to benefits accrued *prior* to marriage. California courts have addressed the nature of other types of benefits acquired prior to marriage. (*Fredericks v. Fredericks* (1991) 226 Cal.App.3d 875, 879 [277 Cal.Rptr. 107] [military pension]; *In re Marriage of Shea* (1980) 111 Cal.App.3d 713, 717 [169 Cal.Rptr. 490] [veteran's education benefits]; *Estate of Updegraph* (1962) 199 Cal.App.2d 419, 420 [18 Cal.Rptr. 591] [police pension].) California courts also have noted the existence of premarital disability payments that continued during marriage, though not as a contested characterization issue. (*Price v. Price, supra,* 217 Cal.App.2d at p. 7 [husband's "army retirement benefits for premarital services and disability" were conceded to be his separate property]; *Estate of Hanson* (1954) 126 Cal.App.2d 71, 73 [271 P.2d 563] [describing husband's military disability benefits as separate property].) And the California Supreme Court has decided a case involving private disability benefits, but in a different temporal context, postseparation. (*In re Marriage of Elfmont* (1995) 9 Cal.4th 1026, 1028, 1033 [39 Cal.Rptr.2d 590, 891 P.2d 136] (*Elfmont*).)

### B. *Analysis*

As we explain, in this case, the circumstances surrounding acquisition of the disability policy compel its characterization as separate property. The pivotal factor is the time of acquisition of the right to the benefits; a secondary consideration here is the source of funds for acquisition. In our case, the right to benefits was acquired by the wife prior to marriage with separate property funds. That being so, the benefits must be characterized as separate property. Under these circumstances, it is unnecessary to consider the function or purpose of the disability payments as either wage replacement or a pension substitute.

#### 1. *Time of Acquisition*

##### a. *The wife acquired the right to the disability benefits prior to marriage.*

As stated above: "Perhaps the most basic characterization factor is the time when property is acquired in relation to the parties' marital status." (*In re*

*Marriage of Haines, supra*, 33 Cal.App.4th at p. 291.) In the words of the California Supreme Court, "what is determinative is the single concrete fact of time." (*In re Marriage of Lehman, supra*, 18 Cal.4th at p. 183.) Applying the proper analytic focus, therefore, the "court first looks to see if the right to the payment accrued during marriage." (*In re Marriage of Frahm, supra*, 45 Cal.App.4th at p. 545, fn. 2.) If not, "it is separate property." (*Ibid.*)

Here, the wife acquired the right to the disability benefits prior to marriage by purchasing the disability insurance policy. The fact that the right to benefits was acquired prior to marriage fixes the character of that property as the wife's separate property.

Our conclusion is bolstered by decisions from the opposite end of the temporal spectrum involving postseparation acquisition of benefits. (See, e.g., *Elfmont, supra*, 9 Cal.4th at p. 1033 [disability benefits were husband's separate property, where he renewed the policies "following the parties' separation, with premiums paid out of his separate property"]; *In re Marriage of Steinberger* (2001) 91 Cal.App.4th 1449, 1459 [111 Cal.Rptr.2d 521] [severance pay was wife's separate property, where "the right to severance pay was acquired not during the marriage, but . . . after the parties separated"]; *In re Marriage of Frahm, supra*, 45 Cal.App.4th at pp. 544–545 [incentive payment for early separation from employment was husband's separate property, where the right to receive it was acquired postseparation]; *In re Marriage of Wicks* (1978) 80 Cal.App.3d 329, 333 [145 Cal.Rptr. 496] [military incentive bonus was husband's separate property, where it represented "compensation for services to be performed in the future, after the parties' separation"].)

b. *The fact that the wife received the benefits during marriage is irrelevant.*

Here, the property in question is the "right to 'draw[] from [a] stream of income that . . . begins to flow' on" disability. (*In re Marriage of Lehman, supra*, 18 Cal.4th at p. 177 [pension benefits].) For property characterization purposes, the critical question is when the right to that stream of income accrued. (See *id.* at pp. 177, 179, 180, 182, 183, 185, 186 [referring to the accrual of the right to pension benefits].) The timing of *receipt* of the benefits themselves is irrelevant. (*In re Marriage of Shea, supra*, 111 Cal.App.3d at p. 717 ["where a fringe benefit is earned entirely by employment before marriage, it is the separate property of the employee even if received after

marriage"]; *Raphael v. Bloomfield* (2003) 113 Cal.App.4th 617, 624 [6 Cal.Rptr.3d 583] ["the timing of the receipt" of a lump-sum workers' compensation award "is unrelated to the purpose of the award"].)

Our conclusion finds support in the three nondisability cases cited earlier: *Estate of Updegraph, supra,* 199 Cal.App.2d 419; *Fredericks v. Fredericks, supra,* 226 Cal.App.3d 875; and *In re Marriage of Shea, supra,* 111 Cal.App.3d 713. All three cases involved benefits *earned* prior to marriage but *paid* during marriage. In each of those three cases, the benefits were characterized as separate property. And in each case, the determinative factor was when the right to benefits *accrued,* not when the benefits were *received.*

In the *Updegraph* case, for example, "all of the events precedent to a vesting of the [deceased husband's] rights to a monthly [police] pension occurred prior to marriage. . . . The decedent's pension rights were earned during his employment [while single] . . . and are not related to any incident occurring during his marriage to appellant." (*Estate of Updegraph, supra,* 199 Cal.App.2d at p. 424, citation omitted.) "The fact that [some] payments . . . were paid after his marriage had no bearing on his right thereto. . . . The conclusion of the trial court that the payments made to him were his separate property was correct." (*Ibid.*) The same timing factor proved pivotal in the *Fredericks* case, which involved a military pension. (*Fredericks v. Fredericks, supra,* 226 Cal.App.3d at p. 879.) There, when the parties remarried in 1975, the husband "was already receiving his military pension." (*Ibid.*) "Because [his] interest in the pension was fully acquired before his 1975 marriage . . . it was his separate property." (*Ibid.*, italics omitted.) The same result obtained in the *Shea* case, which involved veteran's education benefits. (*In re Marriage of Shea, supra,* 111 Cal.App.3d at p. 717.) There, because the husband's qualifying "military service occurred entirely before marriage, . . . his veteran's education benefits are his separate property" even though received during marriage. (*Ibid.*) The same is true here.

## 2. *Source of Funds for Acquisition*

Under the circumstances of this case, time of acquisition is determinative. Because the right to disability benefits accrued prior to marriage, it is separate property. Our analysis properly ends there. But given the stated basis for the trial court's decision, and the husband's defense of that rationale here, we feel constrained to extend our discussion of the issue. As noted above, the trial court concluded that the disability benefits were community property because they functioned as a substitute for wages. In reaching that conclusion, the court relied on *In re Marriage of Saslow* (1985) 40 Cal.3d 848 [221 Cal.Rptr. 546, 710 P.2d 346] (*Saslow*). In *Saslow,* the California Supreme Court "addressed the status of benefits from private disability insurance

policies purchased with community funds." (*Id.* at p. 856.) As we now explain, *Saslow*'s apportionment formula has no application here, since no community property funds were used to acquire the disability policy.

    a.  *The wife paid for the disability policy with separate property funds.*

■ In its 1995 decision in *Elfmont*, the California Supreme Court discussed how the source of funds used in acquiring or renewing a disability policy affects the character of the benefits received under the policy. (*Elfmont, supra,* 9 Cal.4th at pp. 1033–1035.) As stated in *Elfmont*, disability benefits "may be treated as community property only to the extent they were 'purchased during marriage with community funds' [citation]." (*Id.* at p. 1033, quoting *Saslow, supra,* 40 Cal.3d at p. 854.)

The source test enunciated in *Elfmont* is not met here. In this case, the policy was purchased solely with the wife's premarital separate property; no community funds went into its acquisition. Applying the holding of *Elfmont*, the wife "became entitled to draw the benefits" because she had previously paid the "premiums . . . out of [her] separate property . . . . Accordingly, all the benefits are [her] separate property." (*Elfmont, supra,* 9 Cal.4th at p. 1035.)

    b.  *Because no community property funds were used to procure the disability benefits, their function as wage replacement is irrelevant.*

■ The *Saslow* court applied a functional analysis in apportioning disability benefits. (*Saslow, supra,* 40 Cal.3d at pp. 860–861.) Under *Saslow*, courts are directed to treat disability benefits "as separate property insofar as they are intended to replace postdissolution earnings that would have been the separate-property income of the disabled spouse, and treat the benefits as community property insofar as they are intended to provide retirement income." (*Ibid.*) In a similar vein, some commentators have proposed using an analytical rather than a mechanical approach in dividing disability or similar benefits. (See, e.g., Blumberg, *Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance, or Replacement, Analysis* (1986) 33 UCLA L.Rev. 1250, 1289 [urging a functional "replacement analysis" for "wage replacement benefits such as disability pay, workers' compensation, and severance pay"]; cf. Annot., Divorce and Separation: Workers' Compensation Benefits as Marital Property Subject to Distribution (1995) 30 A.L.R.5th 139, 148–151 [describing different approaches to the division of workers' compensation benefits on dissolution, including "mechanistic" and "analytical" approaches].)

The *Elfmont* court also adverted to function, noting: "The purpose of term disability insurance . . . is to replace lost earnings. If during the marriage an insured spouse becomes disabled, the benefits received are community property because they replace community earnings." (*Elfmont, supra,* 9 Cal.4th at p. 1034.) "If the benefits continue after the spouses have separated, they are the separate property of the insured spouse whose earnings they replace, unless during the marriage the premiums were paid out of community funds with the intent that the benefits provide retirement income." (*Ibid.,* citing *Saslow, supra,* 40 Cal.3d at pp. 860–861.)

In *Elfmont,* however, the renewal premiums were not "paid 'during the marriage with community funds' and with the intent of providing community retirement income [citation]." (*Elfmont, supra,* 9 Cal.4th at p. 1035, quoting *Saslow, supra,* 40 Cal.3d at pp. 854, 861.) Instead, the husband paid renewal premiums after separation, "out of his separate property, thereby keeping the insurance in force until he qualified for disability benefits 32 months later." (*Elfmont,* at p. 1033.) Thus, *Elfmont* presented no basis for apportioning the disability benefits between separate and community interests; those benefits were wholly the husband's separate property.

For similar reasons, there is no basis for apportionment in this case and a functional approach thus is unwarranted. With no community contribution, the premarital source of the premium payments compels characterization of the policy benefits as the wife's separate property, regardless of their function or the parties' intent.

### 3. *Conclusion*

The issue before us is one of characterization, not apportionment. Since no community funds were used to pay the disability policy premiums, no question of apportionment arises. This case thus presents no basis for examining the parties' intent or for analyzing the function of the disability benefits as wage replacement.

Under the circumstances presented here, characterization of the disability benefits turns on "the single concrete fact of time." (*In re Marriage of Lehman, supra,* 18 Cal.4th at p. 183.) In this case, the wife accrued the full right to those benefits prior to marriage. For that reason alone, they are her separate property. (§ 770, subd. (a)(1).) There is no suggestion in the briefs or in the record that any contrary title presumption applies, that there has been a transmutation, or that any other circumstance has worked a change in the character of this property. The disability benefits thus retained their character as the wife's separate property throughout the marriage.

## DISPOSITION

Insofar as it determines that the disability benefits are community property, the judgment is reversed. The cause is remanded to the trial court, with instructions to award the disability benefits received during marriage to the wife as her separate property.

Mihara, Acting P. J., and Duffy, J., concurred.