Filed 3/5/25  Marriage of Hixon CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re the Marriage of ADAM and AMANDA HIXON. | |
| ADAM HIXON,<br><br>        Respondent,<br><br>v.<br><br>AMANDA HIXON,<br><br>        Appellant. | E082253<br><br>(Super.Ct.No. FLHE1800210)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Nicholas A. Firetag, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Masson & Fatini, Richard E. Masson, Susan M. Fatini-Masson, for Appellant.

No appearance for Respondent.

Adam Hixon (Husband) and Amanda Hixon (Wife) divorced.  The family court found that, during the marriage, the marital home transmuted from Wife's separate property into community property.  The family court also found that, at the time of trial,

1

the marital home's fair market value was $395,000, which was the value opined by Husband's expert, Jeff Cane (Cane). Wife contends the family court erred by finding a transmutation, by finding Cane qualified as an expert, and by relying on Cane's opinion. We affirm.

## FACTS

In 2010, Wife purchased a house (the House) for $84,000. The House was held in Wife's name, as a single woman, without a mortgage. In 2012, Wife obtained a five-year home equity line of credit (HELOC) of approximately $63,000 on the House. Wife made interest-only payments on the HELOC.

Husband and Wife married in May 2014. Upon marrying, Wife wanted a joint bank account with Husband. From their joint bank account, Husband and Wife continued the interest-only payments on the HELOC. In 2017, as the five-year deadline for the HELOC approached, Husband and Wife obtained an $85,000 mortgage to pay off the HELOC and purchase a car. It was Wife's idea to apply for a mortgage because the HELOC "was a five-year term loan, and [the bank] did not want to renew or extend the loan."

Wife's father is a financial advisor, and he advised Husband and Wife throughout the process of obtaining a mortgage. According to Husband, Wife needed Husband's income and credit score to qualify for the mortgage. According to Wife, she did not need Husband to qualify for the mortgage because she held sufficient equity in the House. Husband and Wife jointly applied for the mortgage.

As part of the mortgage process, Wife changed the deed for the House to reflect it was held by Husband and Wife, as community property. Husband and Wife jointly made the $675 a month payments on the mortgage, $283 of which was principal. Husband and Wife separated in June 2018. Husband moved out of the House in August 2018. At trial, in closing argument, Wife argued a theory of undue influence to support her assertion that there was not a transmutation.

The family court found the House was community property. The family court reasoned, "[Wife] signed a grant deed transferring the property from herself as a single person to both parties as husband and wife with a community property interest and that the parties obtained an $85,000 loan secured by the property to pay off the HELOC. Both parties are now on title and are subject to the new mortgage. Here, I find that this was a proper transmutation as there was a writing signed by [Wife] agreeing to transfer the home, they both agreed to be financially responsible for the loan, and there was no evidence of any undue influence by [Husband]. I find that [Husband] has overcome any presumption of undue influence as he agreed to take on . . . the debt that was [Wife's] debt from the HELOC in exchange for having his name on title. While both parties may not have known exactly what all of the terms meant, they both knew that the home was going from [Wife's] home where she was solely responsible for a loan to their home where both were responsible for the loan. Therefore, as of 5/4/17, I find the parties have a community property interest in the home."

# DISCUSSION

## A. TRANSMUTATION

Wife contends substantial evidence does not support the finding that Husband overcame the presumption of undue influence. We begin our analysis with whether the presumption applies in this case.

"[C]ourts have long held that when an interspousal transaction advantages one spouse, public policy considerations create a presumption that the transaction was the result of undue influence." (*In re Marriage of Starr* (2010) 189 Cal.App.4th 277, 281.) "[T]he 'advantage' which raises a presumption of undue influence in a marital transaction . . . must necessarily be an unfair advantage." (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 730.) A lack of consideration from one spouse in the transaction is an example of an unfair advantage. (*Ibid.*) We apply the substantial evidence standard of review. (*In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 734.)

In 2017, as the five-year deadline for the HELOC approached, the bank declined to extend or renew the HELOC. Thus, Wife needed to obtain a loan. Wife decided to apply for a mortgage. Wife needed Husband's income and credit score to qualify for the mortgage. In exchange for adding Husband to the deed for the House, Wife was given Husband's liability on the mortgage as well as his joint payments on the mortgage. Moreover, for the period that the House was Wife's separate property, the entirety of that separate property value remains with Wife. Husband did not receive half of Wife's separate property. Rather, Husband will receive half of the value that the

4

House accrued from the time it became community property in May 2017. (Fam. Code, § 2640, subd. (b).)

Husband did not receive a windfall when the House became community property. Husband became liable for the mortgage and any issues with the House, while Wife retained the separate property value of the House. Because Husband did not receive an unfair advantage, the presumption of undue influence is inapplicable.

Wife asserts that Husband received an unfair advantage because, in 2017, when the mortgage was obtained, the House appraised for $235,000 with an $85,000 mortgage, creating $150,000 in equity. Wife contends Husband will receive half of that equity, e.g., $75,000, which is a windfall. Wife is mistaken.

The family court's order reads, "For [Wife], she is entitled to a reimbursement for her separate property claim under [Family Code section] 2640. I find that at the time of the transfer, the [House] had a fair market value of $235,000. At the time the [House] was transmuted then, she would have a separate property claim of $235,000 less $63,856.16 for the HELOC, for a total of $171,143.84." Thus, the family court awarded Wife all the equity in the House at the time of the transmutation. Husband will receive only half of the value the House accrued starting in May 2017.

Although the undue influence presumption does not apply, if we assume the presumption did apply, then Husband overcame the presumption. We continue to use the substantial evidence standard of review. (*In re Marriage of Burkle*, *supra*, 139 Cal.App.4th at p. 737.) Husband bore the burden of establishing, by a preponderance of the evidence, that Wife freely and voluntarily executed the deed adding Husband, and

5

did so "with a full knowledge of all the facts and with a complete understanding of the transfer." (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 631.)

It was Wife's idea to apply for a mortgage. Wife wanted to include Husband on the mortgage application for the purpose of using his income and credit score. This evidence reflects Wife understood the advantages of including Husband in the mortgage process.

Husband and Wife discussed "what [it] would mean" to add Husband to the deed for the House. Their plan was to eventually sell the House and move into a new house together. This evidence indicates Wife understood that a significant change was being made to the deed in that the change had meaning or consequences.

Wife has a college degree, and her father is a financial advisor who helped to guide her through the mortgage process. Thus, Wife was educated, and she had her father to consult with on any questions or concerns.

The foregoing evidence supports the finding that Wife executed the deed with knowledge of the facts and an understanding of the transfer. Thus, substantial evidence supports the family court's finding that the presumption was overcome.

B.     QUALIFICATION AS AN EXPERT

1.     *FACTS*

When obtaining the mortgage in 2017, the House appraised for $235,000. Wife estimated that the House's value at the time of the trial, in 2022, was $325,000. Wife's opinion was based on home sales in her neighborhood, with a reduction due to the

6

House needing a new roof and not having many upgrades since it was built in 1984. Wife does not have a background in real estate transactions.

Husband presented Cane's testimony. Cane opined that the value of the House at the time of trial was $395,000 based on comparable sales within a 60-day period prior to trial and within a two-mile radius of the House. Wife objected to Cane being found to be an expert on property values. The family court permitted Wife's attorney to voir dire Cane.

Cane is Husband's friend. Cane is not a licensed real estate appraiser. Cane has had his real estate sales license for 18 years; he owned a brokerage before switching to tax accounting in 2012; and he continues to "do five to eight [real estate] transactions per year" with his brother who owns two real estate agencies. Cane's real estate transactions involve the same southwest Riverside County area as the House. Cane was inside the House years prior to trial and had driven past the House within six months of trial.

The family court overruled Wife's objection, finding that Cane had sufficient expertise to opine on the House's value. Ultimately, the family court found the fair market value of the House to be $395,000, based upon Cane's testimony.

2.      *ANALYSIS*

Wife contends the family court erred by overruling her objection to Cane qualifying as an expert.

A person can qualify as an expert when the person has "special knowledge, skill, experience, training, and education" giving the person the ability to form an opinion on

7

a subject that is beyond common knowledge. (Evid. Code, § 801, subd. (b); *Wells Truckways v. Cebrian* (1954) 122 Cal.App.2d 666, 673-674.) We apply the abuse of discretion standard of review. (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 154.)

Cane has held a real estate sales license for 18 years. While selling real estate is no longer Cane's primary profession, he continues to engage in real estate transactions five to eight times a year in the area where the House is located. Cane's background in real estate sales is the type of experience that qualifies him to testify as an expert on the value of real estate in the area where the House is located. Accordingly, the family court did not abuse its discretion by permitting Cane to testify as an expert.

C.     HEARSAY

1.     *FACTS*

On direct examination, Cane testified that his "brother ([Brother]) owns two Keller Williams where [Cane's] license is assigned. And [Cane] still do[es] five to eight transactions per year with [Brother]." Cane testified that his opinion regarding the value of the House was based upon comparable sales.

On cross-examination, Cane testified that he also relied on "guidance from [his] broker," i.e., Brother, when determining the value of the House. Cane showed Brother the report Cane prepared regarding the value of the House and asked if he was "on the right track and [if] he agrees with it . . . . [Brother] was right on the same page." The report Cane prepared included the information relied upon by Cane in reaching his opinion, such as comparable sales data. The report also included a letter by Brother.

8

Wife's attorney asked Cane a variety of questions about information in the report, supporting documents, and the letter from Brother. For example:

Wife's Attorney: "And so you would agree that this home, if you turn to Bates stamp 11-004—do you see that?

"[Cane]: Yes.

"[Wife's Attorney]: You would see that this home is a mobile manufactured home; correct? [¶] . . . [¶]

"[Cane]: Yes.

"[Wife's Attorney]: It was built in 1984?

"[Cane]: Correct.

"[Wife's Attorney]: Three bedroom, two bath?

"[Cane]: Correct.

"[Wife's Attorney]: And 1,290 square feet total?

"[Cane]: Correct.

"[Wife's Attorney]: And if you turn to the next page at 11-005, it has a detached garage; correct?

"[Cane]: Correct.

"[Wife's Attorney]: And it also is on a lot of 6,969 square feet; correct?

"[Cane]: Yes."

2. *ANALYSIS*

Wife contends the family court erred by permitting Cane to testify to case-specific facts set forth in the report, e.g., the square footage of the House.

9

An expert may "rely on hearsay in forming an opinion, and may tell the [trier of fact] *in general terms* that he did so." (*People v. Sanchez* (2016) 63 Cal.4th 665, 685.) "What an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id.* at p. 686.)

Wife forfeited her contention by not objecting in the family court. (*In re Marriage of Davila and Mejia* (2018) 29 Cal.App.5th 220, 227.) Wife would not have objected because it was her attorney who questioned Cane about the case-specific information in the report.

D.    AUTHENTICATING THE REPORT

1.    *FACTS*

During Wife's counsel's voir dire of Cane, the following exchange occurred:

Wife's Attorney: "[D]id you prepare any report in relation to your determination of value, both of the current value of the [House] . . . ?

"[Cane]: I did.

"[Wife's Attorney]: You personally prepared it?

"[Cane]: Yes."

During cross-examination, the following exchange took place:

"[Wife's Attorney]: 11-006, you see this is a CMA summary report; right?

"[Cane]: Yes.

"[Wife's Attorney]: Who prepared this report for you in particular?

10

"[Cane]: I did. The original list report is in my brother's report, but I prepared all the same paperwork.

"[Wife's Attorney]: So Jessie Swonetz, . . . she actually prepared or provided the information to you; correct?

"[Cane]: Maybe when she prepared my brother's report for him.

"[Wife's Attorney]: Okay. So Exhibit 11 isn't really your report, it's your brother's report; right?

"[Cane]: That's what I said earlier."

2. *ANALYSIS*

Wife contends Cane could not authenticate the report comprising Exhibit No. 11 because Cane did not draft the report, Brother drafted it. This contention is forfeited because Wife did not object on this basis in the family court. (*In re Marriage of Davila and Mejia*, *supra*, 29 Cal.App.5th at p. 227.) Nevertheless, if the contention were not forfeited, the testimony of the drafter of a writing is not required to authenticate a writing. (Evid. Code, § 1411; *Hart v. Keenan Properties, Inc.* (2020) 9 Cal.5th 442, 450-451.) Therefore, if the entirety of Exhibit No. 11 were drafted by Brother, rather than Cane, it is unclear why Cane could not authenticate the report. Further, we note that Exhibit No. 11 was not admitted into evidence.

E. BIAS

Wife contends Cane was biased because Cane loaned Husband $55,000 to pay for lawyers, which gave Cane a personal stake in the outcome of the trial. Wife forfeited this contention by not seeking, in the family court, to have Cane disqualified

11

due to bias. (*In re Marriage of Davila and Mejia*, *supra*, 29 Cal.App.5th at p. 227.) Further, we note that "[a]s with any compensated expert or, indeed, any witness, the opposing party is free to pursue the question of bias and the trier of fact is permitted to consider whether its presence undermines witness credibility." (*Needham v. Superior Court* (2024) 16 Cal.5th 333, 360.) In the instant case, in closing argument, Wife's attorney argued that Cane was not credible due to bias. The family court considered the credibility issue and found Cane credible.

## DISPOSITION

The judgment is affirmed. Appellant Amanda Hixon is to bear her own costs on appeal.[1] (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

---

[1] We do not award costs to Adam Hixon because he did not make an appearance in this court.