T.C. Memo. 2011-154


UNITED STATES TAX COURT



RICHARD H. GLEASON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

LORI A. GLEASON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 980-09, 1043-09.        Filed June 29, 2011.



        R determined deficiencies in income tax and additions
to tax under secs. 6651(a)(1), (2), and (3) and 6654(a),
I.R.C., for Ps' 2001, 2002, and 2003 tax years that were
based on R's determination that Ps failed to report taxable
income.  Ps argue that they did not receive the taxable
income as determined by R.  P-W further argues that to the
extent there was unreported taxable income, it was P-H's
sole and separate property, not community property.

        <u>Held</u>:  Ps received taxable income in 2001, 2002, and
2003 which they failed to report.  The unreported
taxable income is community property, not P-H's sole and
separate property.

        <u>Held</u>, <u>further</u>, Ps are subject to the additions to tax
to the extent redetermined herein.

Richard H. Gleason and Lori A. Gleason, pro sese.

Kimberly A. Santos and Kathryn A. Meyer, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  These consolidated cases are before the Court on petitions for redetermination of deficiencies and additions to tax determined by respondent for petitioners' 2001, 2002, and 2003 tax years.  After concessions by the parties,[1] the issues for decision are:

(1) Whether respondent is barred from assessing income tax deficiencies against petitioner Richard Gleason for his 2002 and 2003 tax years;

(2) whether petitioners received unreported taxable income during their 2001, 2002, and 2003 tax years;

---

[1]The parties agree that:  (1) The wage income earned by and taxable to petitioner Lori Gleason in the 2001 and 2003 tax years was $3,320 and $11,635, respectively, and was her sole and separate property none of which is taxable to Richard Gleason as originally determined by respondent; (2) petitioner Richard Gleason is not obligated to report $8,304 of alleged cancellation of debt income for the 2003 tax year; (3) Mrs. Gleason is not obligated to report $4,152 of alleged cancellation of debt income for the 2003 tax year; (4) Mrs. Gleason is not obligated to report interest income for the 2002 and 2003 tax years of $8.50 and $14, respectively; (5) petitioners are entitled to married filing separate filing status for all tax years at issue; and (6) Mrs. Gleason is entitled to the two dependency exemptions for the couple's two children.

(3) if petitioners received unreported taxable income during their 2001, 2002, and 2003 tax years, whether this income was Mr. Gleason's sole and separate property or community property;

(4) whether petitioners are liable for additions to tax under section 6651(a)(1) for failure to file their 2001, 2002, and 2003 tax returns;[2]

(5) whether Mr. Gleason is liable for additions to tax under section 6651(a)(2) for failure to pay his 2001, 2002, and 2003 taxes;

(6) whether Mrs. Gleason is liable for additions to tax under either section 6651(a)(2) or (3) for failure to pay her 2001, 2002, and 2003 taxes;

(7) whether Mr. Gleason is liable for additions to tax under section 6654(a) for failure to make estimated tax payments for his 2001, 2002, and 2003 tax years; and

(8) whether Mrs. Gleason is liable for additions to tax under section 6654(a) for failure to make estimated tax payments for her 2001 and 2003 tax years.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulations of the parties, with accompanying exhibits, are incorporated herein

[2]All section references are to the Internal Revenue Code of 1986, as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

by this reference. Mr. and Mrs. Gleason were married in 1975 and since then have resided at all times in California, a community property State.

1. Gleason Supply

The major issues in this case stem from petitioners' business, Gleason Supply, and Mrs. Gleason's involvement in Gleason Supply. In 1983 Mr. Gleason applied to be a Mac Tools, Inc. (Mac Tools) distributor. Mac Tools distributors buy tools from Mac Tools at a wholesale distributor rate and then have the exclusive right to sell the tools to third-party retailers located in a designated distributorship territory. Mac Tools establishes suggested retail prices for its tools, and on the basis of these suggested retail prices, distributors make an average profit margin of 37 percent.

Mac Tools requires distributors to meet minimum purchase amounts each month or risk termination of their distributorship contract. Mac Tools distributors are independent contractors, not employees, and Mac Tools does not issue tax information forms such as Form 1099 to its distributors.

Both Mr. and Mrs. Gleason signed the Mac Tools application, although Mrs. Gleason signed only that part of the application that gave Mac Tools permission to perform a credit check on her and Mr. Gleason. Mac Tools approved the application and Mr. Gleason began operating a Mac Tools distributorship in 1984 under

the name Gleason Supply Company (Gleason Supply) and with a distributorship number of 29427.[3]

Mr. Gleason took out a second mortgage of $17,000 on the Gleasons' home to help finance the startup of Gleason Supply Co. Mr. Gleason paid for initial inventory with checks written on the couple's joint account at Security Pacific National Bank. Mr. Gleason listed the Gleasons' home address as the address of Gleason Supply and Mac Tools sent both inventory and mail to the Gleasons' home. Certified mail for Gleason Supply came to the Gleasons' home, and Mrs. Gleason often signed on behalf of Gleason Supply. Mrs. Gleason endorsed checks made out to Gleason Supply; and while she acknowledged that she dealt with Gleason Supply up until at least 1997, there is compelling evidence that she helped with Gleason Supply even after 1997.[4]

Because of consistently low purchase volume, Mac Tools terminated Gleason Supply's distributorship contract effective April 28, 2002. The Gleasons did not, nor were they required to,

---

[3]Gleason Supply Co. was listed on the Mac Tools distributorship application as the name Mr. Gleason intended to use. Although Mr. Gleason used other names including Mac Tools and Richard Gleason Mac Tools, for ease of reference and to distinguish between Mac Tools, Inc., and the distributorship operated by Mr. Gleason, we shall refer to Mr. Gleason's distributorship as Gleason Supply.

[4]After 1997 Mrs. Gleason endorsed checks made out to Gleason Supply and signed certified mail on behalf of Gleason Supply, and customers wrote checks to "Lori Gleason" for their purchases from Gleason Supply.

return any of the tools they had purchased before termination. In fact, the Gleasons continued to operate Gleason Supply and sell Mac Tools for the remainder of 2002 and into 2003.

2.   <u>Bank of America Joint Account</u>

In 1996, using a false taxpayer identification number of "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", Mr. Gleason opened a joint bank account at Bank of America (BA joint account) which remained open during the years in issue.

In addition to the BA joint account, Mrs. Gleason maintained a separate bank account during the years at issue.  Mrs. Gleason received wages from third parties of $3,320 in 2001 and $11,635 in 2003.  Mrs. Gleason indicates that she cashed payroll checks for these amounts.

3.   <u>Community Property Agreement</u>

On June 16, 1997, Mr. and Mrs. Gleason executed a legally valid postnuptial agreement entitled "Community Property Declaration and Agreement" (community property agreement). Essentially, the community property agreement provided that each spouse was divesting himself or herself of any rights he or she had in any community property acquired by the other spouse's "own labor and/or initiative."  The community property agreement provided that such property was "separate and personal property" of the spouse who earned it instead of community property.  It also contained provisions for separate bank accounts as well as a

joint checking account for the purpose of paying Mr. Gleason's "marital support obligations" to Mrs. Gleason. There were no specific provisions regarding income generated from communal efforts.

After the community property agreement was executed, both Mr. and Mrs. Gleason continued to have access to the BA joint account. While Mrs. Gleason argued she had access only for "spousal and family support", she deposited numerous checks written to her, including her 2003 payroll checks, into the BA joint account and wrote checks, including ones to her church and an individual who cared for her mother, on the account. After the community property agreement was executed, Mrs. Gleason endorsed and deposited checks written to Gleason Supply and signed for certified mail on behalf of Gleason Supply, and customers of Gleason Supply wrote checks to Mrs. Gleason for their purchases from Gleason Supply.

## 4. Audit and Investigation

Mr. Gleason and Mrs. Gleason are habitual nonfilers. They failed to timely file tax returns and report their income for all years at issue. Initially, respondent contacted the Gleasons and attempted to convince them to file tax returns or explain and provide records as to why they did not have to file tax returns. Mr. and Mrs. Gleason did not do so, and the agent initially assigned to their case prepared substitutes for their tax

returns, as authorized by section 6020(b), on July 29, 2004, for Mr. Gleason's 2002 tax year and on September 20, 2005, for Mr. Gleason's 2003 tax year.

A Form 1099, Miscellaneous Income, that Collateral Recovery Services, an independent debt collection business hired by Mac Tools, had issued to "Mac Tools Richard Gleason" in 2002 and provided a copy of to respondent led Revenue Agent Andrew Ortiz (RA Ortiz), the agent assigned to the Gleasons' audit and examination, to the existence of Gleason Supply.[5]  RA Ortiz attempted to convince the Gleasons to cooperate, explain Gleason Supply, and bring in documents showing revenue and expenses. After the Gleasons continuously failed to respond to RA Ortiz's requests to meet with them and prepare tax returns, the Gleasons were summoned and finally met with RA Ortiz on August 22, 2006.

At the meeting, the Gleasons did not bring any documents and refused to answer any of RA Ortiz's questions as to their sources of income, work, business, or occupation, instead pleading the Fifth Amendment.  While the Gleasons did verify that they were legally married and resided in Downey, California, they were otherwise uncooperative, refusing to answer even simple questions such as what Mrs. Gleason's maiden name was, what their

---

[5]Respondent transferred Mr. Gleason's case from the initial agent assigned to RA Ortiz in November or December 2005.  RA Ortiz eventually audited both Mr. Gleason's and Mrs. Gleason's returns.

educational background was, whether they rented or owned their home, and whether they were involved with programs such as the American Rights Litigators Promotion, We the People, We the People Sovereignty Pure Trust, or Liberty International.

Because of the Gleasons' lack of cooperation, RA Ortiz relied solely on third-party information to reconstruct the income from Gleason Supply.  As elaborated below, RA Ortiz reconstructed the income from Gleason Supply using two indirect methods:  (1) Bank deposit analysis method and (2) unit and volume method.

Under the first method used to reconstruct the income from Gleason Supply, the bank deposit analysis method, RA Ortiz obtained from Collateral Recovery Services copies of checks issued to Gleason Supply.  Some of these checks had been cashed and some had been deposited into the BA joint account.  RA Ortiz then issued a summons to Bank of America requesting copies of the bank statements for any account the Gleasons maintained at Bank of America.  Bank of America provided statements (BA statements) with regard to the BA joint account.[6]

---

[6]While there is no evidence of the existence of any bank accounts during the years in issue other than the BA joint account and Mrs. Gleason's separate account, Mr. Gleason's use of a fraudulent Social Security number to open the BA joint account and the Gleasons' refusal to answer the question of whether they had any other bank accounts leaves open the possibility that other bank accounts existed.

Using the BA statements, RA Ortiz performed a bank deposit analysis. RA Ortiz calculated the total amount of taxable deposits and examined the statements to see whether any of the deposits were nontaxable. He could find no indication that any of the deposits were nontaxable and although given an opportunity to do so, the Gleasons failed to provide evidence that any of the deposits were nontaxable. In total, RA Ortiz determined taxable income of $23,955.71, $13,634.24, and $34,692.34 for 2001, 2002, and 2003, respectively.

RA Ortiz's second indirect method, the unit and volume method, also reconstructed the income from Gleason Supply. When a Mac Tools distributor orders products from Mac Tools, the Mac Tools accounting department uses the distributor's number to keep track of what that person has purchased, what has been shipped, and what has been paid for.

Mac Tools provided RA Ortiz with the payment and sales history, including the cost and suggested retail price, of items sent or sold to Gleason Supply during the 2001 and 2002 tax years up until termination. With this information, RA Ortiz used retail price to determine gross income and gave credit for the cost of goods sold for each tool. In total, RA Ortiz determined taxable income under the unit and volume method of $47,492 and $11,412 for 2001 and 2002, respectively.

Combining the income computed under both the bank deposit analysis and the unit and volume method, RA Ortiz determined taxable income of $71,447.71, $25,046.24, and $34,692.34 for 2001, 2002, and 2003 respectively.

In response to letters from RA Ortiz regarding her potential tax liability, on March 23, 2008, respondent received Forms 1040, U.S. Individual Income Tax Return, for Mrs. Gleason's 2001, 2002, and 2003 tax years. The 2001 Form 1040 showed $3,320 of income and no taxes owed. The 2002 Form 1040 showed no income and no tax owed. The 2003 Form 1040 showed $11,635 of income and no tax owed. While respondent argues that he did not accept the Forms 1040, his own Exhibits 22-R through 24-R indicate he did accept and file the Forms 1040.[7] Mr. Gleason never filed a tax return for any of the years in issue.

---

[7]We acknowledge there is conflicting evidence as to whether respondent accepted Mrs. Gleason's Forms 1040. On the Form 4549-A, Income Tax Discrepancy Adjustments, attached to the notice of deficiency issued to Mrs. Gleason, respondent, on the line entitled "Taxable Income Per Return or as Previously Adjusted", lists "0.00" for all 3 tax years. In his answer, respondent admits to receiving the Forms 1040 but "denies that tax returns for [Mrs. Gleason's] 2001, 2002, and 2003 [tax years] were duly filed and accepted by respondent". However, certified Account Transcripts prepared by respondent for Mrs. Gleason's 2001, 2002, and 2003 tax years indicate returns were filed on Mar. 24, 2008, for all 3 years. And on Apr. 10, 2008, respondent noted on all three Account Transcripts that the "IRS can assess tax until 03-24-2011" thus giving the impression he had accepted the returns and the statute of limitations on assessment had started running. We find that the Account Transcripts, certified and prepared contemporaneously, are presumptively correct and better evidence than the notice of deficiency. Respondent's answer is simply a pleading and not evidence in this case.

On October 8, 2008, respondent prepared updated examination reports and substitutes for returns for Mr. Gleason's 2002 and 2003 tax years as well as one for his 2001 tax year.  On the basis of these substitutes for return, on October 14, 2008, respondent issued a notice of deficiency to Mr. Gleason showing the following deficiencies and additions to tax:

|  |  | Additions to Tax | | |
| Tax Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2001 | $12,559 | $2,825 | $3,139 | $501 |
| 2002 | 3,009 | 677 | 752 | 100 |
| 2003 | 4,850 | 1,091 | 1,212 | 125 |

Also on October 14, 2008, respondent issued a notice of deficiency to Mrs. Gleason showing the following deficiencies and additions to tax:

|  |  | Additions to Tax | |
| Tax Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 2001 | $5,174 | $206 | $1,292 |
| 2002 | 963 | --- | 240 |
| 2003 | 3,935 | 101 | 983 |

Petitioners timely petitioned this Court.  Respondent thereafter conceded issues including that the community property agreement was valid and pursuant to it, Mr. Gleason is not liable for one-half of the wage income earned by Mrs. Gleason in the 2001 and 2003 tax years.

On the basis of the community property agreement and additional alleged facts, in his answers filed on March 19, 2009,

respondent sought increased deficiencies and additions to tax against both petitioners.  Respondent's answer to Mr. Gleason's petition showed the following asserted deficiencies and additions to tax:

|  |  | Additions to Tax | | |
| Tax Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2001 | $19,090 | $4,294.58 | $4,771.75 | $762.78 |
| 2002 | 3,780 | 850.50 | 945 | 126.31 |
| 2003 | 5,472 | 1,231.20 | 1,368 | 141.17 |

Respondent's answer to Mrs. Gleason's petition showed the following asserted deficiencies and additions to tax:

|  |  | Additions to Tax | | |
| Tax Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2001 | $5,628 | $1,265.63 | $1,406.25 | $224.17 |
| 2002 | 963 | 216.68 | 240 | --- |
| 2003 | 4,805 | 1,081.13 | 1,201.25 | 123.97 |

The cases were consolidated for trial, briefing, and opinion on February 22, 2010.  Trial was held on February 23, 2010, in Los Angeles, California.

OPINION

## I.  Preliminary Evidentiary Matters

At trial respondent introduced into evidence Exhibits 32-R and 33-R, which, according to respondent, were Mr. Gleason's purchase history from Mac Tools for 2001 and 2002 up until termination.  Respondent used the information in Exhibits 32-R and 33-R to reconstruct income under the unit and volume method.

RA Ortiz testified that he called Mac Tools and asked for Mr. Gleason's purchase history. A representative of Mac Tools spoke to RA Ortiz over the telephone and later emailed RA Ortiz, attaching the requested purchase histories to the email. A copy of the email was identified as Exhibit 31-R and admitted into evidence. RA Ortiz testified that Exhibit 32-R was Mr. Gleason's purchase history for 2001, that Exhibit 33-R was Mr. Gleason's purchase history from January 2002 up until termination, and that both had been attached to the email. RA Ortiz further testified that Exhibits 32-R and 33-R were accurate representations of the information provided by Mac Tools and that the exhibits matched Exhibit 10-R, Mr. Gleason's distributorship file, which had been admitted into evidence.

When respondent moved to have Exhibits 32-R and 33-R admitted into evidence, Mr. Gleason objected on the grounds of hearsay and lack of authentication. At trial, this Court, concerned among other things about the hearsay aspects, the authentication, and the chain of custody of Exhibits 32-R and 33-R, reserved ruling on the admissibility of Exhibits 32-R and 33-R.

The rules of evidence applicable to Tax Court proceedings are the rules applicable in trial without jury in the U.S. District Court for the District of Columbia. These include the

Federal Rules of Evidence.  See Rule 143(a); <u>Vallone v. Commissioner</u>, 88 T.C. 794, 796 n.3 (1987).

Rule 901(a) of the Federal Rules of Evidence provides that the requirement of authentication is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims".  The authenticity of Exhibits 32-R and 33-R is supported by RA Ortiz's testimony that the exhibits represent Mr. Gleason's purchase history from Mac Tools and that RA Ortiz received the information in Exhibits 32-R and 33-R after requesting it from Mac Tools and talking to a representative over the telephone.  Their authenticity is also supported by Exhibit 31-R, the email from the Mac Tools representative, which states that she attached the purchase and payment history for 2001-2002 for "Gleason".  Their authenticity is further supported by comparing them to Exhibit 10-R.  We find that the disputed documents were properly authenticated.  See <u>Ioane v. Commissioner</u>, T.C. Memo. 2009-68; see also <u>Alexander Dawson, Inc. v. NLRB</u>, 586 F.2d 1300, 1302 (9th Cir. 1978) ("The context of a document, when considered with the circumstances surrounding its discovery, is an adequate basis for a ruling admitting it into evidence.").

We now turn to petitioners' hearsay objection.  Rule 801(c) of the Federal Rules of Evidence defines "Hearsay" as "a statement, other than one made by the declarant while testifying

at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Hearsay is generally excluded from evidence unless an exception applies.  See Fed. R. Evid. 801 and 802; Snyder v. Commissioner, 93 T.C. 529, 532 (1989).

Exhibits 32-R and 33-R are both spreadsheets containing columns of numbers; and other than RA Ortiz's testimony, there is no indication where these numbers came from.  No certification or affidavit was attached to either exhibit, and neither "Mac Tools" nor any other identifier is present reflecting authorship of the spreadsheets.  While RA Ortiz testified that a representative of Mac Tools provided the spreadsheets to him, respondent did not call the representative to testify.  Both Exhibits contain handwritten notes we presume to have been made by RA Ortiz although it is unclear.  We find that Exhibits 32-R and 33-R are hearsay; and respondent did not offer an exception to the hearsay rules, nor can this Court ascertain one.

Respondent argues that in the event this Court finds that Exhibits 32-R and 33-R are inadmissible hearsay, we should admit them for the limited purpose of showing the reasonableness of respondent's deficiency determinations.  For the reasons set forth infra note 11, we agree and admit Exhibits 32-R and 33-R for the limited purpose of showing the reasonableness of respondent's determination.

II. Whether Respondent Is Barred From Assessing Deficiencies
    Against Mr. Gleason for His 2002 and 2003 Tax Years

Mr. Gleason asserts that respondent may no longer assess any deficiency for his 2002 or 2003 tax years because the period during which assessment can be made has expired. We disagree. The period of limitations on assessment begins to run only after a taxpayer files a return. See sec. 6501(a). Where, as here, the taxpayer fails to file any return at all for the years at issue, "the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time". Sec. 6501(a), (c)(3); see also Taylor v. Commissioner, 43 F.3d 1483 (10th Cir. 1994), affg. without published opinion T.C. Memo. 1993-529.

Mr. Gleason argues that the substitutes for returns prepared by respondent on July 29, 2004, for his 2002 tax year and on September 20, 2005, for his 2003 tax year constitute the filing of a return and caused the limitations period for assessment to begin to run. Mr. Gleason is incorrect. Substitutes for returns prepared by the Commissioner do "not start the running of the period of limitations on assessment and collection." Sec. 6501(b)(3).

Because Mr. Gleason did not file a return for 2002 or 2003, the period for assessing deficiencies for these years remains open.

III. <u>Whether Petitioners Received Unreported Taxable Income</u>

    A.    <u>Burden of Proof</u>

As a general rule, the Commissioner's determination of a taxpayer's liability in the notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Pursuant to Rule 142(a)(1), respondent bears the burden of proof for the increased deficiencies asserted in his answers to both petitions. See <u>Gefen v. Commissioner</u>, 87 T.C. 1471, 1489 (1986). Because the increased deficiencies were not based on respondent's unreported income allegations, Rule 142(a)(1) does not shift the burden of proof to respondent as to this issue.[8]

However, in unreported income cases, the presumption of correctness does not attach unless the Commissioner first establishes an evidentiary foundation linking the taxpayer to the alleged income-producing activity.[9] See <u>Weimerskirch v.</u>

_____

[8]The increased deficiencies were based on respondent's allegation that Mr. Gleason received cancellation of indebtedness income, which respondent has conceded; and that Mrs. Gleason was entitled to dependency exemptions for the couple's two children and that Mrs. Gleason's income was her sole and separate property, not community property, neither of which petitioners dispute.

[9]In <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986), we held that "A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income." We recognize that respondent in part used a bank deposit analysis to
(continued...)

Commissioner, 596 F.2d 358, 360-362 (9th Cir. 1979), revg. 67

T.C. 672 (1977).  The requisite evidentiary foundation is minimal

and need not include direct evidence.[10]  See  Banister v.

Commissioner, T.C. Memo. 2008-201, affd. 107 AFTR 2d 2011-1156,

2011-1 USTC par. 50,257 (9th Cir. 2011); Curtis v. Commissioner,

T.C. Memo. 2001-308, affd. in part and revd. on another issue 73

Fed. Appx. 200 (9th Cir. 2003).

> The Ninth Circuit has made it clear * * * that once the
> government has carried its initial burden of introducing
> some substantive evidence linking the taxpayer with income-
> producing activity, the taxpayer has the burden to rebut the
> presumption of correctness of respondent's deficiency
> determination by establishing by a preponderance of the
> evidence that the deficiency determination is arbitrary or
> erroneous. * * *

Petzoldt v. Commissioner, 92 T.C. 661, 689 (1989); see also Hardy

v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), affg. T.C.

---

[9](...continued)
reconstruct Mr. Gleason's income.  However, because respondent
relied on a second method, the unit and volume method, respondent
must still establish an evidentiary foundation linking Mr.
Gleason with Gleason Supply.

[10]Pursuant to sec. 7491(a), the burden of proof on factual
issues that affect the taxpayer's tax liability may shift to the
Commissioner where the "taxpayer introduces credible evidence
with respect to * * * such issue."  The burden will shift only if
the taxpayer has, inter alia, complied with applicable
substantiation requirements and "cooperated with reasonable
requests by the Secretary for witnesses, information, documents,
meetings, and interviews".  Sec. 7491(a)(2).  Petitioners did not
raise the burden of proof issue, did not introduce any credible
evidence, and failed to comply with the substantiation
requirements.  Accordingly, sec. 7491(a) does not shift the
burden of proof to respondent.

Memo. 1997-97; Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985).

Respondent has established the requisite evidentiary foundation linking Mr. Gleason with an income-producing activity, here Gleason Supply. Respondent introduced evidence that Mr. Gleason operated a distributorship up until termination in April 2002. For the remainder of 2002 and 2003, respondent introduced evidence including witnesses and canceled checks demonstrating that Mr. Gleason continued to sell tools even after the termination of his distributorship.[11] Mr. Gleason does not deny the existence of Gleason Supply. Rather, Mr. Gleason asserts that the burden of proof is on respondent and that respondent "failed to sustain its burden of proof". Mrs. Gleason never disputed the existence of Gleason Supply; rather, she asserts that the income from Gleason Supply was Mr. Gleason's sole and separate property and not community property.

The Court finds that respondent has established the requisite minimal evidentiary foundation linking Mr. Gleason with an income-producing activity for all years in issue and therefore Mr. Gleason bears the burden of proving the deficiency

---

[11]For purposes of determining whether petitioners received unreported taxable income, we refer solely to Mr. Gleason. We reserve the issue pertaining to Mrs. Gleason's involvement for later under our discussion of the effect of petitioners' community property agreement on their taxable income.

determination arbitrary or erroneous.  See Palmer v. IRS, 116 F.3d 1309, 1313 (9th Cir. 1997) (holding that the minimal evidentiary burden was met after the IRS investigated and uncovered evidence that the taxpayer had worked for wages in 2 years and was self-employed in others); Banister v. Commissioner, supra (holding that information from third-party payors that they had paid the taxpayers was enough to meet the minimal evidentiary burden even though direct evidence was not in the record).

B.    Analysis

Taxpayers bear the responsibility to maintain books and records that are sufficient to establish their income.  See sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  When a taxpayer fails to keep adequate books and records, the Commissioner is authorized to determine the existence and amount of the taxpayer's income by any method that clearly reflects income.  Sec. 446(b); Mallette Bros. Constr. Co. v. United States, 695 F.2d 145, 148 (5th Cir. 1983); Parks v. Commissioner, 94 T.C. 654, 658 (1990); Petzoldt v. Commissioner, supra at 686-687.  Because of Mr. Gleason's utter lack of cooperation and refusal to provide any books or records, respondent was forced to use indirect methods to reconstruct Mr. Gleason's taxable income.

The Commissioner is afforded great latitude in determining a taxpayer's liability and is entitled to use any reasonable method

to reconstruct a taxpayer's income, especially where a taxpayer files no returns and refuses to cooperate in ascertaining income. Petzoldt v. Commissioner, supra at 693; Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Taylor v. Commissioner, T.C. Memo. 2006-67. The Commissioner's reconstruction of a taxpayer's income need not be exact but must be reasonable in light of all surrounding facts and circumstances. Petzoldt v. Commissioner, supra at 687; Schroeder v. Commissioner, 40 T.C. 30, 33 (1963); A.J. Concrete Pumping, Inc. v. Commissioner, T.C. Memo. 2001-42. Where the Commissioner's method of calculating income is rationally based, courts afford a presumption of correctness to the Commissioner's determination, and taxpayers bear the burden of proving that the Commissioner's determinations are erroneous. Palmer v. IRS, supra at 1312.

Mr. Gleason failed to keep books or records, failed to file tax returns, and refused to cooperate with respondent. While both of the methods respondent used to reconstruct Mr. Gleason's taxable income are established methods accepted by this Court,[12]

---

[12]"The use of the bank deposit method for computing income has long been sanctioned by the courts." Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). "When a taxpayer keeps no books or records, has large bank deposits, and offers no plausible explanation of such deposits, the Commissioner is not arbitrary or capricious in resorting to the bank deposit method for computing income." Id. at 657. "A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income." Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (citing Estate of
(continued...)

we are here faced with the more difficult question of whether respondent's using both methods together and then totaling the separate results is reasonable. We conclude, on the facts and circumstances of this particular case, that the use of both

---

¹²(...continued)
Mason v. Commissioner, supra at 656-657). The bank deposit method of reconstruction assumes that all of the money deposited into a taxpayer's account is taxable income unless the taxpayer can show that the deposits are not taxable; however, the IRS must take into account any nontaxable items or deductible expenses of which it has knowledge. Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994); DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

The unit and volume method is an established method accepted by this Court. Key v. Commissioner, T.C. Memo. 2001-166; Park v. Commissioner, T.C. Memo. 1994-343. Under this method, taxable income is determined by projecting sales and cost of goods sold from a business's purchase history.

As stated above, this Court is admitting Exhibits 32-R and 33-R for the limited purpose of showing the reasonableness of respondent's determinations. Respondent used Exhibits 32-R and 33-R to help reconstruct income under the unit and volume method. Respondent may determine a deficiency on the basis of hearsay or other inadmissible evidence, and otherwise inadmissible evidence may be used to show the reasonableness of respondent's actions. See Cebollero v. Commissioner, 967 F.2d 986, 993 (4th Cir. 1992), (citing Jackson v. Commissioner, 73 T.C. 394, 400 (1979)), affg. T.C. Memo. 1990-618; Avery v. Commissioner, 574 F.2d 467, 468 (9th Cir. 1978) (affirming Tax Court decision allowing inadmissible statements to support the reasonableness of an IRS agent's actions), affg. T.C. Memo. 1976-129; Wapnick v. Commissioner, T.C. Memo. 2002-45. Additionally, RA Ortiz's lengthy and credible testimony as to how he determined taxable income using the unit and volume method is sufficient to prove the method's reasonableness even without Exhibits 32-R and 33-R. See, e.g., Cebollero v. Commissioner, supra at 993 (admitting testimony about what a revenue agent was told when she called and asked for a list of prices from the taxpayer's supplier for the purpose of verifying markup figures and showing the reasonableness of the revenue agent's method).

methods together is reasonable and respondent's determination is not arbitrary or necessarily per se erroneous.

Respondent maintains that both methods were necessary "Because of petitioners' refusal to provide any testimony or documents regarding any sources of income they had during the tax years at issue * * * although not exact, * * * [use of both methods] was necessary to determine all income generated from the tool selling business".  Mr. Gleason, relying solely on this Court's vocal concern at trial that using both methods might lead to duplication, argues that we should "accept only one method".

If respondent had used only the bank deposit analysis method to reconstruct taxable income, cash transactions and checks deposited into other bank accounts would not have been counted. If respondent had used only the unit and volume method to reconstruct taxable income, the inventory Mr. Gleason had on hand as of January 1, 2001, and which was subsequently sold would not have been counted.

Mr. Gleason could have timely filed tax returns.  Mr. Gleason could have complied with RA Ortiz's requests.  When summoned, Mr. Gleason could have cooperated, instead of refusing to provide any information and continuously pleading the Fifth Amendment.  Mr. Gleason could have introduced evidence at trial to prove double-counting, yet he did not.  "The rule is well established that the failure of a party to introduce evidence

within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable."[13]  Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

We acknowledge that stacking both methods may potentially result in double-counting in the event items bought from Mac Tools in 2001 or 2002 were subsequently sold to a third party who paid by check deposited into the BA joint account.  However Mr. Gleason does not point to any instance of duplication.[14]

We acknowledge the troubles inherent with respondent's use of two different methods to reconstruct Mr. Gleason's income, yet

---

[13]We note that "'Arithmetic precision was originally and exclusively in * * * [Mr. Gleason's] hands, and he had a statutory duty to provide it...[H]aving defaulted in his duty, he cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination.'"  Page v. Commissioner, 58 F.3d 1342, 1348 n.6 (8th Cir. 1995) (quoting Rowell v. Commissioner, 884 F.2d 1085, 1088 (8th Cir. 1989), affg. T.C. Memo. 1988-410), affg. T.C. Memo. 1993-398.

[14]This Court, in examining the exhibits, found duplication in three instances, all involving Mrs. Gleason depositing her 2003 payroll checks into the BA joint account.  Ex. 9-R, Bates Numbers 92, 109, and 150.  The parties have conceded that Mrs. Gleason should be taxed on her 2003 wages, and therefore these three items will be removed from respondent's bank deposit analysis.

We do this despite Mrs. Gleason's testimony that she cashed her payroll checks.  Since the parties conceded that the 2003 wages were Mrs. Gleason's sole and separate property and that she was liable for the taxes, we do not reach the issue of whether Mrs. Gleason's deposits into the BA joint account affect the status of the wages as either her sole and separate property or community property.

we are not persuaded that respondent's determination was arbitrary or capricious in view of Mr. Gleason's utter lack of cooperation, failure to provide documents or records, and failure to point to any specific duplication.  See Petzoldt v. Commissioner, 92 T.C. at 693-694 (stating that the absence of adequate tax records weakens any critique of the Commissioner's method of reconstruction and that mathematical exactitude is not required for "it 'would be tantamount to holding that skillful concealment is an invincible barrier to proof'"); King v. Commissioner, T.C. Memo. 1998-69 (concluding that the Commissioner's use of a combination of methods to reconstruct the taxpayer's income was reasonable), affd. without published opinion 182 F.3d 903 (3d Cir. 1999).

"We are troubled by * * * [the Commissioner's] method of reconstruction.  * * * Nevertheless, * * * [the Gleasons] did not present any evidence that persuades us that * * * [the Commissioner's] determination was arbitrary or without foundation.  * * * On balance, we are more troubled by the * * * [Gleason's lack of evidence] than by * * * [the Commissioner's] method."  Maltese v. Commissioner, T.C. Memo. 1988-322. Accordingly, we sustain respondent's determination on this issue.[15]

_____

[15]Gleason Supply was a sole proprietorship, and the income therefrom is "self-employment income" subject to self-employment
(continued...)

IV.  Whether Under California Community Property Law
     Petitioners' Unreported Taxable Income Is Mr. Gleason's Sole
     and Separate Property or Community Property

"A married individual is taxable on the earnings of his or her spouse to the extent that the laws of the state of residence grants that individual a vested property or ownership interest in the spouse's earnings."  Edwards v. Commissioner, 680 F.2d 1268, 1271 (9th Cir. 1982) (citing United States v. Mitchell, 403 U.S. 190, 196-197 (1971)).  California is a community property State and under California law each party has a vested interest in community property sufficient to establish his or her liability for Federal income tax on his or her half of the community income.  Cal. Fam. Code sec. 760 (West 2004); United States v. Malcolm, 282 U.S. 792 (1931).

There is a statutory presumption that property acquired by the spouses during marriage other than by gift or inheritance is community property.  In re Marriage of Rossin, 172 Cal. App. 4th 725, 731 (2009).  This presumption is a strong one; the California Supreme Court characterized it as fundamental to the community property system.  Katz v. United States, 382 F.2d 723, 728 (9th Cir. 1967); In re Duncan's Estate, 70 P.2d 174, 179 (Cal. 1937).  The presumption can be overcome only by clear and satisfactory proof.  In re Jolly's Estate, 238 P. 353, 353 (Cal.

---

[15](...continued)
tax.  See secs. 1401, 1402.

1925).  The presumption that property is community property is even stronger when the property was acquired with community property and when the "marriage has been a long-continued relation".  In re Duncan's Estate, supra at 179.

However, it is also well established that married taxpayers may by agreement change community property to separate property and vice versa, with or without consideration.  Cal. Fam. Code sec. 850 (West 2004); Katz v. United States, supra at 729.  "A transmutation is an interspousal transaction or agreement that works a change in the character of the property".  In re Marriage of Rossin, supra at 734.  The principal issue here is Mr. and Mrs. Gleason's 1997 community property agreement and whether the agreement transmuted Gleason Supply and the income therefrom into Mr. Gleason's sole and separate property.  Respondent has conceded that the agreement is valid, and therefore the issue is the effect of the agreement, not its validity.

The community property agreement provides in part:

> Lori Ann Gleason, wife, voluntarily divest [sic] herself of any right, interest, or claim she may have to, or in, any community property considered interest income, stocks, bonds, dividends, wages, income, rental income or other earnings, and all realty and personal vehicles which Richard H. Gleason acquired by and through his own labor and/or initiative which Lori Ann Gleason, wife, may have acquired by and through the marriage.

The community property agreement contains no provisions regarding income generated from communal efforts.

Mr. Gleason initially capitalized Gleason Supply with checks written on the couple's joint account and by taking out a second mortgage on the community home. He used a truck purchased with community funds. Mrs. Gleason cosigned on the credit check Mac Tools ran against Mr. Gleason. Mrs. Gleason admitted that she dealt with Gleason Supply up until at least 1997 but does not offer proof that her involvement ended in 1997.

Mrs. Gleason asserts she had nothing to do with Gleason Supply during 2001--2003, the years in issue. Yet during this period, checks for tools purchased from Gleason Supply were written solely to Lori Gleason. Checks issued to Gleason Supply were deposited into the couple's BA joint account, and Mrs. Gleason herself endorsed several of the checks.

On the record before us and petitioners' lack of evidence to the contrary, we do not find that the income from Gleason Supply was separate income attributed solely to Mr. Gleason. Mrs. Gleason provided no evidence to this Court to support her claims that she did not actively participate in Gleason Supply. Accordingly, we find that the income from Gleason Supply was community income and sustain respondent's determination with regard to this issue.[16]

---

[16]Because we hold that the income from Gleason Supply was community income, we do not reach the issue of, if it was initially Mr. Gleason's sole and separate property, whether it was subsequently commingled and became community property. We

(continued...)

V.  Additions to Tax

Respondent bears the burden of production with regard to the additions to tax.[17]  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  To meet this burden, respondent must produce sufficient evidence establishing that it is appropriate to impose the additions to tax.  See Higbee v. Commissioner, supra at 446.  However, respondent does not have to produce evidence of substantial authority, the lack of reasonable cause, or lack of willful neglect.  See id.; Davis v. Commissioner, 81 T.C. 806, 820 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985).

A.  Section 6651(a)(1)

Generally, "any person made liable for any tax * * * shall make a return or statement according to the forms and regulations prescribed by the Secretary."  Sec. 6011(a).  Section 6651(a)(1), in the case of a failure to file a return on time, imposes an addition to tax of 5 percent of the tax required to be shown on

_____

[16](...continued)
note, however, the use of community funds to operate Gleason Supply and Mrs. Gleason's seemingly unrestricted access to the BA joint account.

[17]While we recognize that respondent bears the burden of proof with regard to the increased deficiencies asserted in his answer, see Garrison v. Commissioner, T.C. Memo. 2010-261, for the reasons set forth supra note 8, we find this of no consequence as either respondent has conceded the liabilities giving rise to the increased deficiencies or petitioners agree to the increased deficiencies.

the return for each month or fraction thereof for which there is a failure to file, not to exceed 25 percent in the aggregate. The penalty will not apply if it is shown that such failure is due to reasonable cause and not due to willful neglect.

Petitioners did not timely file their 2001, 2002, or 2003 tax return. Respondent has thus met his burden of production. See Wheeler v. Commissioner, 127 T.C. 200, 207-208 (2006) (holding that evidence showing the taxpayer did not file his income tax return was sufficient to satisfy the IRS' burden of production for section 6651(a)(1)), affd. 521 F.3d 1289 (10th Cir. 2008). Further, petitioners have not presented any evidence that their failure to file was due to reasonable cause and not willful neglect. Accordingly, we sustain the additions to tax under section 6651(a)(1) for petitioners' 2001, 2002, and 2003 tax years.

B. Mr. Gleason--Section 6651(a)(2)

Respondent determined Mr. Gleason is liable for additions to tax under section 6651(a)(2) for failure to pay his 2001, 2002, and 2003 taxes. Section 6651(a)(2) provides for an addition to tax of .5 percent per month up to 25 percent for failure to pay the amount shown on a return unless it is shown that the failure is due to reasonable cause and not due to willful neglect.[18]

_____

[18]The sec. 6651(a)(1) addition to tax is reduced by the amount of the sec. 6651(a)(2) addition to tax for any month (or
(continued...)

The Commissioner's burden of production with respect to the section 6651(a)(2) addition to tax requires that the Commissioner introduce evidence that a return showing the taxpayer's tax liability was filed for the year in question. In a case such as this where the taxpayer did not file a return, the Commissioner must introduce evidence that an SFR [substitute for return] satisfying the requirements of section 6020(b) was made. See Cabirac v. Commissioner, * * * [120 T.C. 163, 170 (2003)]. * * *

Wheeler v. Commissioner, supra at 210.

Under section 6651(g)(2), a return prepared by the Secretary pursuant to section 6020(b) is treated as a return filed by the taxpayer for the purpose of determining the amount of an addition to tax under section 6651(a)(2). To constitute a section 6020(b) return, "the return must be subscribed, it must contain sufficient information from which to compute the taxpayer's tax liability, and the return form and any attachments must purport to be a 'return'." Spurlock v. Commissioner, T.C. Memo. 2003-124.

Substitutes for returns were filed on Mr. Gleason's behalf for his 2001, 2002, and 2003 tax years. The substitutes for returns consisted of Forms 4549-A, Income Tax Examination Changes, Forms 886-A, Explanation of Changes, and Forms 13496, IRS Section 6020(b) Certification. Mr. Gleason argues that the substitutes for returns fail because they do not contain Forms 1040.

---

[18](...continued) fraction thereof) to which an addition to tax applies under both sec. 6651(a)(1) and (2). See sec. 6651(c)(1).

Mr. Gleason is incorrect. The Forms 4549-A contained his name, address, and Social Security number and sufficient information to compute tax liability. Therefore, the substitutes for returns filed for Mr. Gleason constitute section 6020(b) tax returns and are treated as returns filed by him for purposes of section 6651(a)(2). See, e.g., <u>Rivera v. Commissioner</u>, T.C. Memo. 2009-215 (holding that a return containing a proposed individual income tax assessment and section 6020(b) certification constituted a valid return for purposes of section 6651(a)(2)); see also <u>Hawkins v. Commissioner</u>, T.C. Memo. 2008-168.

Mr. Gleason did not pay his 2001, 2002, or 2003 taxes. Respondent has thus met his burden of production. Mr. Gleason has not presented any evidence that such failure to pay was due to reasonable cause and not willful neglect. Consequently, we sustain respondent's additions to tax under section 6651(a)(2) for Mr. Gleason's 2001, 2002, and 2003 tax years.

C.  <u>Mrs. Gleason--Section 6651(a)(2) or (3)</u>

Respondent asserts that Mrs. Gleason is liable for additions to tax under section 6651(a)(2) for failure to pay her 2001, 2002, and 2003 taxes and that if this Court finds she filed tax returns for the 2001, 2002, and 2003 tax years, she is liable under section 6651(a)(3) for failure to pay her 2001, 2002, and 2003 taxes.

First, respondent accepted the Forms 1040 filed on March 23, 2008, for Mrs. Gleason's 2001, 2002, and 2003 tax years. Because respondent accepted the Forms 1040 as valid returns, we reject respondent's determination that Mrs. Gleason is liable for section 6651(a)(2) additions to tax for her 2001, 2002, and 2003 tax years. See Cabirac v. Commissioner, T.C. Memo. 2008-142.

Second, section 6651(a)(3) imposes an addition to tax for failure to pay any amount not shown but required to be shown on a return within 21 days of notice and demand (within 10 days if over $100,000). See Burke v. Commissioner, T.C. Memo. 2009-282. Notice and demand is provided for in section 6303 and "follows the making of an assessment". Id. Assessment cannot be made until this Court's decision has been made final. Sec. 6503(a)(1). Therefore, the predicates for the imposition of an addition to tax under section 6651(a)(3) have not been satisfied and assessment is premature. See Commissioner v. McCoy, 484 U.S. 3, 7 (1987).

C. Section 6654(a)

Respondent determined that Mr. Gleason was liable for additions to tax under section 6654(a) for his 2001, 2002, and 2003 tax years and that Mrs. Gleason was liable for additions to tax under section 6654(a) for her 2001 and 2003 tax years. Section 6654(a) imposes an addition to tax where prepayments of tax, either through withholding or by making estimated quarterly

tax payments during the course of the year, do not equal the percentage of total liability required under the statute. However, the addition to tax will not apply if one of the several statutory exemptions applies.  See Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).

The section 6654(a) addition to tax is calculated by applying the section 6621 underpayment interest rate to the amount of each underpayment from the due date of each installment until April 15 following the close of the taxable year (for calendar year taxpayers).  Sec. 6654(a), (b)(2).  The amount of each underpayment is the amount of "the required installment" less "the amount (if any) of the installment paid on or before the due date for the installment."  Sec. 6654(b)(1).  The "required installment" is due at four times during the year and is 25 percent of the "required annual payment."  Sec. 6654(c)(1), (d)(1)(A).  For individual taxpayers whose adjusted gross income for the taxable year is $150,000 or less, a "required annual payment" is equal to

the lesser of--

(i) 90 percent of the tax shown on the return for the  taxable year (or, if no return is filed, 90 percent of the tax for such year), or

(ii) 100 percent of the tax shown on the return of the individual for the preceding taxable year.

Clause (ii) shall not apply if the preceding taxable   year was not a taxable year of 12 months or if the individual did not file a return for such preceding taxable year.

Sec. 6654(d)(1)(B).  Unless a statutory exception applies, the section 6654(a) addition to tax is mandatory.  Sec. 6654(a), (e); Recklitis v. Commissioner, 91 T.C. 874, 913 (1988).  Section 6654 does not contain a general exception for reasonable cause or absence of willful neglect.  Grosshandler v. Commissioner, supra at 21.

To meet his burden of production with regard to the section 6654(a) addition to tax, respondent must at a minimum produce evidence necessary to enable the Court to conclude that Mr. Gleason had a required annual payment for 2001, 2002, and 2003, and that Mrs. Gleason had an annual payment for 2001 and 2003. See Wheeler v. Commissioner, 127 T.C. at 11.

Respondent has met the burden of production with respect to the section 6654(a) additions to tax for Mr. Gleason's 2002 and 2003 but has failed to meet his burden of production with respect to Mr. Gleason's 2001 tax year.  Mr. Gleason did not make his required estimated tax payments for either 2002 or 2003.  He does not qualify for any of the exceptions listed in section 6654(e). Respondent introduced no evidence about his 2000 tax return or whether he failed to file his 2000 tax return.  Without this information, we cannot calculate the required estimated annual payment for his 2001 tax year, if any.

Because Mr. Gleason failed to file Federal income tax returns for 2001 and 2002, Mr. Gleason's required annual payment

of estimated tax for 2002 and 2003 was 90 percent of his tax for each year.  See Wheeler v. Commissioner, supra at 211-212; see also Rivera v. Commissioner, supra; Walzer v. Commissioner, T.C. Memo. 2009-200.  Mr. Gleason is liable for section 6654 additions to tax for his 2002 and 2003 tax years.

As with Mr. Gleason, respondent never introduced evidence regarding Mrs. Gleason's 2000 tax return.  Additionally, we have held that a taxpayer's estimated tax liability is based upon the taxpayer's tax liability as stated on the original tax return as filed, and not upon the notice of deficiency amount or the ultimate tax liability.  See Mendes v. Commissioner, 121 T.C. 308, 324 (2003).  Mrs. Gleason filed returns for 2001 and 2003 showing no tax owed.  The section 6654 addition to tax is calculated on a "required annual payment" which is equal to the lesser of "90 percent of the tax shown on the return for the taxable year" or 100 percent of the tax shown on the previous year's return.  Sec. 6654(d)(1)(B)(i).  As 90 percent of zero is zero, the lesser of the two will be zero and therefore Mrs. Gleason is not liable for a section 6654 addition to tax for her 2001 or 2003 tax year.

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.