Filed 3/25/15  Marriage of Alexis CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of ANNA and BRIAN ALEXIS. | B248594 consolidated with B250859 |
| ANNA ALEXIS,<br><br>        Respondent,<br><br>        v.<br><br>BRIAN ALEXIS,<br><br>        Appellant. | (Los Angeles County Super. Ct. No. BD431906) |

        APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Thomas Trent Lewis and Randall Pacheco, Judges.  Affirmed.

        Brian Alexis, in pro. per., for Appellant.

        Anna Alexis, in pro. per., for Respondent.

_____

This appeal arises from the dissolution of the marriage of Anna Alexis (Wife) and Brian Alexis, also known as Blagoy Petrov Alexiev (Husband). Husband challenges the trial court's judgment determining the date of separation and the characterization, valuation, and division of real property and other assets, and contends the trial court erred in excluding evidence at trial addressing his health issues associated with radiation poisoning to support his theory that Wife poisoned him. Husband, representing himself in this appeal, raises more than 30 claims of error during trial. Husband also challenges an interim ruling concerning the division and management of the couple's apartment buildings before judgment was entered, and postjudgment orders related to enforcement of the judgment.

As we shall explain, given the limited appellate record in this judgment roll appeal, Husband did not meet his burden to demonstrate reversible trial court error. Accordingly, we will affirm the judgment and postjudgment orders.

BACKGROUND

Wife initiated these proceedings in August 2005, and eight years later judgment was entered on the division of the couple's property. The clerk's transcript consists of 42 volumes as numerous discovery disputes and other filings delayed bringing this case to trial. We therefore limit our background recitation of facts to the circumstances relevant to the contentions on appeal. Moreover, because Husband elected to proceed with this appeal on the clerk's transcript, without a reporter's transcript of the trial or an agreed statement of facts,[1] the relevant facts are taken from the trial court's findings and conclusions. (*Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207.)

---

[1] The trial on the reserved property issues was nine court days, ending on December 11, 2012. The appellate record includes reporter's transcripts for numerous hearings leading up to trial, and one reporter's transcript dated December 11, 2012, the last day of trial. Husband, however, does not cite to this trial transcript in support of any claims of error.

2

1. *Facts*

Husband and Wife were married for 18 years. Husband was born in Bulgaria, and Wife was born in the former Soviet Union, Republic of Ukraine. They moved to the United States in 1989.

Wife filed a petition for legal separation in August 2005. Husband's response to the petition sought dissolution of the marriage. A judgment dissolving the marriage (status only) was filed on January 13, 2009, and the court retained jurisdiction over spousal support, property division, and attorney fees. Throughout these proceedings, each party accused the other of inappropriate conduct associated with the management of the couple's property and other assets.

Although Husband contended that the date of separation was January 2005, the trial court determined that the date of separation was August 25, 2005. The trial court noted, however, that the date is not significant because "the family business, including the parties' three apartment buildings and the property in Colorado, is entirely community property."

a. *The Family Business – Pharmabul Inc., Pharmabul-Bulgaria EEOD, Eskabal*

In 1996, Husband and Wife formed Pharmabul, a company that marketed a dietary supplement called Trilovin. Pharmabul was incorporated in 1997, and they obtained a patent for Trilovin in 1998. They marketed and obtained orders for Trilovin through a website managed by a third party. Trilovin sales generated gross income of approximately $500,000 per year from 1999 through 2005.

In August 2005, Husband transferred an unknown quantity of Pharmabul inventory to Hiro Kawaguchi or his company KAZ International. The trial court valued that inventory at $50,000 based upon the number of boxes and the retail sale price of a bottle of Trilovin.

Husband also transferred a substantial amount of Pharmabul inventory valued at $798,000 to Dr. Iraj Kiani, along with $500,000 that he withdrew from a Pharmabul bank account. In September 2005, Husband gave Kiani an additional $40,000 to conduct a

3

clinical study. Husband, despite claiming to have abandoned the business, continued to operate Pharmabul.

Husband transferred control of the Trilovin and Pharmabul websites to his son Peter Alexon so that the internet orders were routed to a different web address that Wife could not access. Alexon also attempted to transfer the patent for the name Pharmabul.

Before separation, Husband started another company, Pharmabul-Bulgaria EOOD. The KAZ International website states the operation of Pharmabul was moved in 2005 to Bulgaria under the control of Pharmabul-Bulgaria EEOD. Pharmabul-Bulgaria EEOD continues to operate, and KAZ International continues to sell Trilovin.

Wife transferred approximately $120,000 from two Pharmabul bank accounts into two new accounts in which she was the sole signatory. Wife continued to fill orders for Trilovin from August 2005 to October 2005, until she no longer had access to the Trilovin or Pharmabul websites or to inventory.

Husband and Wife disputed whether Pharmabul should be characterized as community or separate property. The trial court concluded that Pharmabul, Pharmabul-Bulgaria EEOD, another entity called Eskabul, also known as Exabul, and any patents and trademarks obtained during the marriage were community property.

b. *Apartment Buildings*

The couple owned apartment buildings located at 1250 Chelsea Avenue, Santa Monica (Chelsea Property), 836 N. Fuller Avenue, Los Angeles (Fuller Property), and 2415-2421 Arizona Avenue, Santa Monica (Arizona Property). In 2012, pursuant to a court order, the Arizona Property was sold to pay attorney fees.

Wife resided in a unit at the Chelsea Property and had exclusive management and control over all three apartment buildings until a receiver was appointed in March 2009. One of the rental units at the Chelsea Property remained available to Husband by court order from February 2006 through April 2009, but he never lived in the unit.

4

The receivership was terminated effective March 31, 2013. On March 7, 2013, after the conclusion of trial, Wife was awarded use, management and control of the Chelsea Property and the Fuller Property.[2]

Before trial, Husband and Wife both maintained that the fair market value of the Chelsea Property was $950,000, with $880,000 in net equity. While Husband attempted to change his opinion at trial, the court determined that he did not make the necessary showing to support his new opinion. Husband also changed his opinion about the fair market value of the Fuller Property, but he did not make the necessary showing at trial. Wife valued the Fuller Property at $1.2 million with net equity of $1.1 million. Before trial, Husband valued the Fuller Property at $1 million with net equity of $870,000.

Husband sought to charge Wife the fair rental value of the use of one of the units at the Chelsea Property since the date of separation, and her use of the rental income before the appointment of the receiver to support herself and assist their son in obtaining a college education. The trial court found, however, that Husband's income from Pharmabul, the community property family business, was equivalent to Wife's income from the rental property, and the rental value of her unit at the Chelsea Property. In making this finding, the trial court noted that Husband did not present sufficient evidence to establish his income, having failed to provide meaningful discovery regarding his finances since the date of separation. In addition to the failure of proof, the trial court refused to order reimbursement for Husband's community share of the benefits Wife received from the apartment buildings as an evidentiary sanction for failure to respond to discovery.

---

[2]     The statement of decision reads: "This was done prior to preparation of the full Tentative Statement of Decision primarily to avoid incurring further receivership fees." Husband appeals from this March 7, 2013 order (B248594). The trial court's interim ruling is not an appealable order, thus we treat the appeal as being taken from the judgment entered on August 6, 2013 from which Husband appeals (B250859). These appeals have been consolidated for briefing and disposition.

## c. *Colorado Real Property and Bulgarian Real Property*

During the marriage, husband purchased real property in Colorado. Despite numerous discovery requests, Husband failed to identify property believed to be located in Alamoso County, Colorado. Through other sources, Wife obtained a warranty deed for property located in Costilla County, Colorado. Husband paid $90,500 in community funds to obtain the Costilla County, Colorado property.

Husband purchased substantial real property in Bulgaria in 2005. He purchased additional real property in Bulgaria in 2006 and 2007. Husband initially failed to disclose these properties. Husband maintained that he had inherited the funds to purchase the Bulgarian property, but he previously had testified at his deposition that he bought the property with Pharmabul funds. Despite numerous discovery requests, Husband did not produce any documents showing how he obtained the funds to purchase the real property in Bulgaria. Husband took title to the Bulgarian property in his name, or in the name of Pharmabul-Bulgaria EEOD, or Eskabul.

The trial court determined that Husband failed to present sufficient evidence that all of the Bulgarian property he eventually disclosed in these proceedings was his separate property. Moreover, as an evidentiary sanction, all of the Bulgarian property was determined to be community property, with the exception of four properties in the village Ognyanova and the village Daganovo. The trial court found that these four properties were inherited and never transmuted into community property. Consistent

6

with prior orders of the court, the trial court ordered the community property in Bulgaria sold.[3]

The trial court rejected Husband's request for reimbursement under Family Code section 2640[4] for separate property contributions to the purchase of the Bulgarian property. Husband's evidence that he used his separate property to purchase property in Bulgaria was inconsistent and not supported by any documentary evidence. In addition to the failure of proof, the trial court denied reimbursement as an evidentiary sanction.

### d. *Bank Accounts and Loans*

Wife and Husband both accused the other of bad faith in withdrawing and hiding large amounts of money. In addition to the $120,000 withdrawn from Pharmabul accounts, Wife withdrew $50,000 from an account in her own name and deposited it in a six-month CD, which the trial court concluded was community property.

In June 2005, Husband obtained a loan from Wife's daughter in the amount of $50,000. Wife attempted to pay back the loan, but her daughter refused. The trial court determined that the $50,000 was a community property debt owed to Wife's daughter.

Husband admitted at trial that he took $50,000 from a security deposit box. The trial court rejected Husband's claim that Wife accessed $100,000 (approximately

---

[3]   On May 13, 2013, the trial court ordered the sale of the Bulgarian property, making a finding that all property owned in whole or in part by Husband, Pharmabul-Bulgaria, Global Center of Innovative Technology, or Eskabul (aka Exabul) is community property. The trial court found by clear and convincing evidence that Husband, willfully and intentionally took community funds for his own use, with the intention of depriving Wife of her share of community assets. The trial court's order "empower[s]" Wife "with the authority of the Court to sell and liquidate, at a reasonable price," the Bulgarian property located in Krumovgrad, Xarmanli, Stranjevo, Sofia, and Elin-Pelin, held under Husband's name, Pharmabul-Bulgaria, and Global Center of Innovative Technology. Husband appealed that order, which is modified and incorporated into the judgment. Thus, the appeal is deemed to be taken from the judgment.

[4]   Unless otherwise indicated, all further statutory references are to the Family Code.

7

$97,000) in community funds from a bank account, finding those funds belonged to Wife's daughter, and were not community property.

### e. *Evidentiary Sanctions*

Before trial, the court issued sanctions (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1479) in the amount of $50,000 against Husband for failure to disclose real property in Bulgaria, and in the amount of $75,000 for discovery noncompliance. Those *Feldman* sanctions were paid to Wife's counsel from a community property line of credit obtained on the couple's apartment buildings. Husband also was ordered to pay a total of $14,385 in discovery sanctions, which were paid from the community property line of credit. Accordingly, the trial court concluded that Husband owed Wife $69,693.

### f. *Attorney Fees*

Wife incurred $870,000 in attorney fees and costs, which the trial court determined was reasonable based upon the "inordinate amount of work [Husband's] obstruction and serial accusations have caused." The trial court made numerous findings that Husband breached his fiduciary duty of disclosure during the dissolution proceedings and specifically relied on section 1101, subdivision (g), which mandates an attorney fees award. The trial court also made a finding under section 1101, subdivision (h), which allows attorney fees as an additional sanction.

In addition to Husband's obstruction and serial accusations, the trial court found that Husband "willfully and purposely engaged in a campaign to seize the family business." Husband then "surreptitiously continued to operate the business directly or through surrogates, and used business income and assets to purchase real property that he intended to keep for himself." Based upon these findings, the court assessed attorney fees and costs in the amount of $435,000 payable by Husband to Wife pursuant to sections 271, 1101, subdivisions (g) and (h).

8

2. *Proceedings*

      a.  *Trial on Division of Property (Reserved Issues), Statement of Decision*

After the nine-day trial, the court issued a tentative statement of decision. Both parties filed objections. Husband submitted a 68-page document attempting to add new evidence and reargue the case, which the trial court concluded did not warrant modification of the tentative statement of decision. The statement of decision was filed on June 3, 2013.

      b.  *Judgment on Division of Property (Reserved Issues), Appeal*

Notice of entry of judgment was filed on August 6, 2013. The judgment states the Bulgarian property "shall be sold as soon as possible. Except as set forth in this Judgment, the net sales proceeds of the Bulgarian Properties shall be divided evenly between the parties." Husband "shall promptly cooperate with [Wife] regarding the sale of the Bulgarian Properties." The judgment provided that Husband's share of the sale proceeds "shall first be taken by [Wife] to pay the equalization payment set forth in this Judgment, to pay sanctions and attorney fees awarded to [Wife] in this proceeding, and to pay any other unpaid debt owed by [Husband] pursuant to this Judgment."

The trial court retained jurisdiction over "any and all issues related to and arising out of the sale or ownership of the Bulgarian Properties and division of the proceeds related thereto."

Husband timely filed a notice of appeal from the judgment.

      c.  *Order on Reserved Issues, Ex Parte Order, Appeal*

On August 20, 2013, the trial court made findings and orders in connection with taxes owed and the community line of credit extended on the Arizona Property. The trial court also ordered and instructed the Deputy Clerk of Court to sign the following documents: (1) quitclaim deed on the Costilla County, Colorado property; (2) quitclaim deed on the Alamosa County, Colorado property; (3) interspousal transfer deed on the Fuller Property; (4) interspousal transfer deed on the Chelsea Property; and (5) request for taxpayer identification in connection with the sale of the Arizona Property.

Husband timely filed a notice of appeal.

9

d. *Motion to Vacate, Appeal*

On September 19, 2013, Husband filed a motion to vacate the August 20, 2013 order and ex parte order pursuant to Code of Civil Procedure section 663 on the grounds the orders were taken in violation of the law.  The trial court denied the motion with prejudice.

Husband timely filed a notice of appeal.

CONTENTIONS

Husband contends that the trial court abused its discretion in excluding evidence at trial, erred in determining the date of separation, erred in its characterization of Pharmabul and the related entities, erred in its characterization and valuation of the Chelsea Property and the Fuller Property, erred in awarding Wife the Colorado properties as a sanction, erred in its allocation of bank account assets, and erred in awarding Wife attorney fees.  In addition, Husband contends that the trial court lacked jurisdiction to determine that the Bulgarian property was a community asset and to thereafter order the sale and distribution of the proceeds.[5]

DISCUSSION

1. *Standard of Review*

Husband did not provide a reporter's trial transcript and elected to proceed with this appeal based upon a clerk's transcript.  This is known as a judgment roll appeal. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082-1083; *Krueger v. Bank of America*, *supra*, 145 Cal.App.3d at p. 207.)  "In a judgment roll appeal based on a clerk's transcript, every presumption is in favor of the validity of the judgment and all facts consistent with its validity will be presumed to have existed.  The sufficiency of the evidence is not open to review.  The trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate

---

[5]    Husband appealed from the postjudgment orders dated August 20, 2013, and the denial of his statutory motion to vacate those orders, but he has failed to address these orders in his opening brief and therefore any claim of error has been forfeited.  (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4.)

10

court, unless reversible error appears on the record." (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924; see also Cal. Rules of Court, rule 8.163.)

"[T]he record before us consists properly of only the judgment, findings of fact and conclusions of law in support thereof, and the pleadings; we are not concerned with evidence taken in the trial court, either orally or through the admission of exhibits (whether or not said exhibits are incorporated into the clerk's transcript). . . ." *(Millbrae Assn. for Residential Survival v. City of Millbrae* (1968) 262 Cal.App.2d 222, 226-227.) Husband cannot enlarge the scope of appellate review by designating for inclusion in the clerk's transcript documents not properly a part of the judgment roll, such as the exhibits received in evidence. (*Tibbets v. Robb* (1958) 158 Cal.App.2d 330, 337.)

Further, a judgment or order of the trial court is presumed to be correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977-978.) It is Husband's burden to affirmatively demonstrate reversible error by: (1) providing an adequate record that affirmatively demonstrates error; (2) supporting all appellate arguments with legal analysis and appropriate citations to the material facts in the record; and (3) showing exactly how the error causes a miscarriage of justice, or else his contentions are deemed forfeited. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1240; *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.)

Husband's appellate record is not adequate, and his opening brief lacks both citations to pertinent legal authority and coherent legal argument demonstrating reversible error. (See Cal. Rules of Court, rule 8.204(a)(1)(B)-(C)). Although Husband appears in this court without counsel, that does not entitle him to special treatment. (See, e.g., *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

These procedural rules are not mere technical requirements; they are essential to the appellate process. Husband must " 'present [his] cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply

11

may be advised . . . of the exact question under consideration, instead of being compelled to extricate it from the mass.' " (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4.)

With our standard of review and these procedural rules in mind, we turn to the contentions on appeal.

2. *Exclusion of Evidence*

Husband contends the trial court erred in excluding evidence related to his theories that Wife attempted to kill him by poisoning him, and that Wife forged his signature to certain documents to hide assets. The court's rulings on the exclusion of particular evidence are not matters appearing on the face of the record and cannot be reviewed in a judgment roll appeal. (See *Clemmens v. Clemmens* (1936) 14 Cal.App.2d 31.) Thus, the law compels us to assume the trial court's decisions are correct.

3. *Sufficiency of the Evidence*

Husband's claims of error concern the trial court's determination of the date of separation and its rulings on the characterization, valuation, and division of property. These errors address the sufficiency of the evidence, which is not subject to attack on a judgment roll appeal. We cannot review the sufficiency of the record if the record does not contain all the evidence. Under these circumstances, we must presume the evidence submitted was sufficient to sustain the trial court's decision.

a. *Date of Separation*

Husband contends the trial court erred in determining that August 25, 2005 was the date of separation, as he claims to have presented sufficient evidence that the date of separation was in January 2005. The significance of this fact affects Husband's contentions regarding the characterization of the family business and the Bulgarian property.

"[L]egal separation requires not only a parting of the ways with no present intention of resuming marital relations, but also, more importantly, *conduct* evidencing *a complete and final break* in the marital relationship." (*In re Marriage of von der Nuell* (1994) 23 Cal.App.4th 730, 736.) Thus, a court decides the date of separation by

12

examining two components, one subjective and the other objective. (*In re Marriage of Norviel* (2002) 102 Cal.App.4th 1152, 1158-1159.) The subjective component examines whether either party harbors the subjective intent to end the marriage. The objective component examines whether there is objective conduct in furtherance of that intent. (*Id.* at p. 1159.) The determination of a date of separation is proven by a preponderance of evidence. (*In re Marriage of Peters* (1997) 52 Cal.App.4th 1487, 1489, 1491-1494.) In this case, we review the trial court's determination of disputed facts related to the date of separation under the substantial evidence standard. (*In re Marriage of Norviel*, at p. 1158.) As a reviewing court, we must view the evidence in the light most favorable to the prevailing party, giving Wife the benefit of every reasonable inference, and resolving all conflicts in her favor. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

The appellate record indicates that the trial court followed the law in determining the date of separation. Because Husband failed to provide an adequate record to determine whether substantial evidence supports the trial court's factual findings, we are required to resolve the issue against him and presume that the trial court's decision is supported by substantial evidence.

b. *Characterization and Valuation of Pharmabul and Related Entities*

Husband raises numerous errors concerning the characterization of Pharmabul, Pharmabul-Bulgaria EEOD, and Eskabul. "In general, all property that a spouse acquires during marriage before separation is community property." (*In re Marriage of Green* (2013) 56 Cal.4th 1130, 1134; Fam. Code, § 760 ["Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."].)

"Generally speaking, property characterization depends on three factors: (1) the time of acquisition; (2) the 'operation of various presumptions, particularly those concerning the form of title'; and (3) the determination 'whether the spouses have transmuted' the property in question, thereby changing its character. [Citation.] In some cases, a fourth factor may be involved: whether the parties' actions short of formal transmutation have converted the property's character, as by commingling to the extent

13

that tracing is impossible.  [Citation.]" (*In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 732.)  The factual findings that underpin the characterization of property as either community or separate are reviewed for substantial evidence.  (*Id.* at p. 734.)

The trial court made a determination that "[w]ith the possible exception of pre-existing real property in Europe and [Husband's] possible inheritance . . . , all of the parties' assets and debts at the time of separation, including everything related to the dietary supplement business, were acquired during the marriage and are community property."  Given the appellate record, we must conclusively presume that the evidence is sufficient to sustain the trial court's finding.  Accordingly, Husband's additional claims of error addressing the trial court's characterization of community property assets purchased with Pharmabul funds also fail.[6]

Husband next contends that the trial court legally erred by concluding that he owed a fiduciary duty to Wife in connection with his management of Pharmabul.  This argument is based upon Husband's assertion that Pharmabul was his separate property and he owed no duty to Wife.  Under section 721, subdivision (b), spouses "are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other.  This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other.  This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 16403, 16404, and 16503 of the Corporations Code."  Fiduciary duties are made specifically applicable during dissolution proceedings by section 1110,

---

[6]    Husband claims as error the trial court's characterization of the apartment buildings as community assets based upon his assertion that Pharmabul funds were used to renovate the apartment buildings.  He further claims that the Colorado properties and two vehicles should have been characterized as separate property because they were purchased with funds drawn from Pharmabul accounts.

14

subdivision (e).[7]  Section 721, subdivision (b) "makes clear that the duty to disclose relevant information concerning transactions affecting the community property is an affirmative and broad obligation." (*In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1269.)

The trial court's factual finding that Husband breached his fiduciary duty owed to Wife when, for example, Husband engaged in a "clandestine campaign" to take over the family business and surreptitiously used community funds to buy property in Bulgaria in his own name, cannot be challenged on a judgment roll appeal.  Given the appellate record, Husband has presented no grounds on the face of the appellate record to show reversible error.[8]

Finally, Husband argues that the trial court erred in valuing Pharmabul at "zero value."  In making this argument, Husband cites to the section of the trial court's statement of decision entitled "Conclusion," but he fails to reference the lengthy valuation discussion in the statement of decision where the trial court valued Pharmabul and the Bulgarian entities at $136,000.

---

[7]  Section 1100, subdivision (e) provides:  "Each spouse shall act with respect to the other spouse in the management and control of the community assets and liabilities in accordance with the general rules governing fiduciary relationships which control the actions of persons having relationships of personal confidence as specified in Section 721, until such time as the assets and liabilities have been divided by the parties or by a court.  This duty includes the obligation to make full disclosure to the other spouse of all material facts and information regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable, and to provide equal access to all information, records, and books that pertain to the value and character of those assets and debts, upon request."

[8]  Although Husband claims the trial court erred in assessing attorney fees as sanctions against Pharmabul, Pharmabul-Bulgaria EEOD, and Eskabul, as discussed *post*, the attorney fees were assessed against Husband.

15

c. *Valuation and Division of Apartment Buildings to Wife, Section 1101,*
*Subdivision (h) Remedy*

Husband contends that the trial court erred in its valuation of the Chelsea Property and the Fuller Property. He further contends that the trial court erred in dividing the community property insofar as the trial court should have assessed Wife with the rental income she earned while managing the apartments.

"The trial court possesses broad discretion to determine the value of community assets as long as its determination is within the range of the evidence presented. [Citation.] The valuation of a particular asset is a factual question for the trial court, and its determination will be upheld on appeal if supported by substantial evidence in the record. [Citation.] All issues of credibility are for the trier of fact, and all conflicts in the evidence must be resolved in support of the judgment. [Citation.] The trial court's judgment is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citation.]" (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 670.)

The trial court also is vested with considerable discretion to divide community property to achieve an equitable resolution. (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 625.) Where the court is vested with discretion, we review its ruling for abuse of that discretion. (*In re Marriage of Reuling* (1994) 23 Cal.App.4th 1428, 1435.) "As long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it." (*In re Marriage of Duncan*, at p. 625.)

The trial court valued the Chelsea Property and the Fuller Property based on evidence presented by both parties. The trial court did not credit Husband's change of opinion on the value of these assets. Given the appellate record, the law compels us to

16

assume the evidence presented to the trial court supports the valuation of these properties.[9]

The trial court's decision not to award Husband a share of profits from the apartment buildings during the period that Wife managed the properties (2006-2009) is also presumed to be supported by substantial evidence. During this period, neither party paid spousal support. In weighing the evidence, the trial court concluded that Husband's income from Pharmabul was equivalent to Wife's income from the apartment buildings and the rental value of the unit she occupied at the Chelsea Property. The charge against Wife for the use of the unit also would have been offset by the rental unit that was made available to Husband during the same period.

In addition, the trial court declined to order reimbursement for Husband's community share of the benefits Wife received from the rental income as an evidentiary sanction for failure to disclose basic records concerning the operation of Pharmabul after separation. As noted above, section 721, subdivision (b), provides that spouses are subject to the general rules governing fiduciary relationships "that control the actions of persons occupying confidential relations with each other." Section 1101, subdivision (h) permits an award to the other spouse for breach of fiduciary duty "as set forth in Section 721 and 1100 . . . of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty." Here, the trial court awarded Wife 100 percent of the value of the community property interest in the rental income because Husband continued to realize significant income from Pharmabul during the same period and breached his fiduciary duty of disclosure.

---

[9] The Chelsea Property and the Fuller Property indisputably are community assets. Thus, contrary to Husband's opening brief, the trial court's decision to award the apartment buildings to Wife was not a sanction but an equal division of community property.

17

d. *Section 1101, Subdivision (h) Remedy of Value of Undisclosed Colorado Properties*

Husband contends the trial court erred in awarding the vacant Colorado properties to Wife. Although Husband does not develop this argument further, he cites to the record to show a transfer of $90,500 from a Pharmabul account, which the trial court determined was community property. He failed to produce any documents at trial to substantiate his claim that the Colorado properties were his separate property. Husband's challenge to the sufficiency of the evidence fails for lack of an adequate appellate record.

To the extent Husband challenges the sanction, Husband did not disclose the Colorado properties in any schedule of assets and debts he prepared in violation of his fiduciary duty owed to Wife. Husband "surreptiously" purchased the Colorado properties in his own name with community funds. Based upon this finding, Wife was awarded the Costilla County, Colorado property valued at $10,000. The trial court determined by clear and convincing evidence that Husband breached his fiduciary duty owed to Wife because he failed to disclose any information regarding the Alamosa County, Colorado property. Pursuant to section 1101, subdivision (h), Wife was awarded 100 percent of any real property in Colorado.

e. *Characterization and Division of Bank Accounts, Cash, and Other Assets*

Husband contends there was insufficient evidence to support the trial court's separate property characterization that an account containing approximately $97,000 belonged to Wife's daughter. The trial court, however, credited Wife's testimony that the account belonged to her daughter. The trial court also credited Wife's testimony that she used $50,000 in community funds for expenses on the Chelsea property and the Fuller Property. It is up to the trial court to make that credibility determination, and given the appellate record, the law compels us to conclude that substantial evidence supports the trial court's decision.

Husband further contends there was insufficient evidence to support the trial court's order dividing community property assets and debts, awarding him the $50,000

loan from Wife's daughter, and $50,000 in cash taken from a security deposit box.  The trial court made a finding that Husband received the $50,000 loan, which is a community debt.[10]  Husband did not deny at the time of trial that he took at least $50,000 from the security deposit box.  Although Husband cites to Wife's deposition testimony to support his argument, presumably for purposes of impeaching her testimony at trial on this point, Husband has not shown this deposition testimony was admitted into evidence, and in any event, he cannot challenge the sufficiency of the evidence on a judgment roll appeal.

We have reviewed Husband's additional contentions in his opening brief and conclude that he has not shown reversible error.

Because Husband is confined to showing errors that affirmatively are demonstrated by the record, "showing any such error is extraordinarily hard to do, given that a challenge to the sufficiency of the evidence cannot be made."  (*In re Marriage of Hall* (2000) 81 Cal.App.4th 313, 316.)  Here, Husband has not met his burden on appeal.

4.  *Attorney Fees Award and Evidentiary Sanctions*

Husband challenges the trial court's order awarding attorney fees and costs to Wife, along with the evidentiary sanctions previously awarded in this action.  Husband mistakenly argues that the trial court awarded Wife $870,000 and an additional $435,000.  Wife reasonably incurred $870,000 in attorney fees and costs.  The trial court ordered Husband to pay Wife $435,000 for the purpose of compensating Wife's counsel based on section 271, which permits the award of attorney fees for conduct that frustrates the policy of the law to promote settlement of litigation, and section 1101, subdivisions (g) and (h).  Subdivision (g) provides that remedies for breach of a fiduciary duty by one

---

[10]    Husband also claims the trial court actually should have charged Wife $100,959.46 in connection with this loan transaction.  As the trial court stated, Husband claimed two checks were used to repay the loan.  Wife produced records showing that the first check for $50,959.40 (which included interest) was "written but exchanged for two separate checks:  one for $50,000 and one for $956.40."  "The back of the check for $50,959.40 specifically states it was not used for intended purpose."  Although Wife attempted to repay the loan, her daughter did not accept the funds and they were deposited into Wife's account.

19

spouse include attorney fees and costs. The trial court concluded that Husband's "obstruction, obfuscation, and one unfounded accusation after another," along with his breach of fiduciary duty owed to Wife in "willfully and purposefully engag[ing] in a campaign to seize the family business" and thereafter "surreptitiously continued to operate the business . . . and used business income and assets to purchase real property which he intended to keep himself," warranted the award of attorney fees to Wife. Husband presents no reasoned argument or citation to legal authority to show the award was reversible error.

Husband apparently challenges the June 2010 sanctions order in the amount of $50,000, and the April 2012 sanctions order in the amount of $75,000 against him. These sanctions already have been paid from the community property line of credit taken on the apartment buildings. Even if a challenge to these sanctions orders were timely, our standard of review is an abuse of discretion. (*In re Marriage of Feldman*, *supra*, 153 Cal.App.4th at pp. 1478-1479.) We review any finding of fact that formed the basis for the award of sanctions under a substantial evidence standard. (*Id*. at p. 1479.) Based upon the applicable standard of review, Husband has failed to meet his burden to show reversible error.

5. *Jurisdiction over Characterization and Division of Bulgarian Real Property*

Husband appears to contend the trial court lacked jurisdiction to determine that the Bulgarian property was community property because only the Bulgarian courts can make that determination. Property "wherever situated" acquired by a married person during marriage while domiciled in this state is community property. (§ 760.) While the court lacks jurisdiction to enter an order directly affecting title to property outside its borders, it may declare the interests in such property and can make such orders to a person over whom it has personal jurisdiction. (See *Rozan v. Rozan* (1957) 49 Cal.2d 322, 330.) The trial court further determined that in acquiring the Bulgarian property in his name or the name of a third-party entity, Husband violated his fiduciary duty owed to Wife. In support of the judgment, we interpret the decree as a declaration of entitlement to the

20

property.[11]  There can be no question as to a trial court's authority to order the sale of community property assets where such a sale is necessary in order to effect the equal division of the community estate mandated by section 2550.

Husband also contends that the Bulgarian property was purchased with money from the sale of two properties he owned before marriage, his inheritance, and money borrowed from his son.  The trial court, however, concluded that Husband failed to submit any documents evidencing when he purchased the real property in Bulgaria or the source of funds used to purchase the property.[12]  The trial court also determined Husband's testimony denying that he used community property funds to purchase the Bulgarian property lacked credibility.  We do not second guess the trial court's credibility determination on appeal.  Moreover, given the appellate record, the trial court's findings of fact are presumed to be supported by substantial evidence and are binding on this court.  Accordingly, Husband has not met his burden of demonstrating reversible error on the face of the appellate record.

---

[11]     Husband also claims that the judgment must be reversed because the trial court determined that the four properties in the village Ognyanova and the village Daganovo are his separate property, when these properties actually belong to "16 Heirs not to Brian."  In support of the judgment, we interpret the decree entered as determining the interest in these properties as between Husband and Wife.

[12]     Husband also claims that he purchased the Bulgarian real property after January 2005, which he maintains is the date of separation.  The trial court, however, determined that the date of separation was August 25, 2005.  That finding is presumed correct given the appellate record before us.

21

DISPOSITION

The judgment and postjudgment orders are affirmed.  Wife is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.

We concur:



EDMON, P. J.



KITCHING, J.